**UNITED STATES of America,**
Appellant,

v.

**McCRORY HOLDING COMPANY et al.,**
Appellees.

**No. 18405.**

United States Court of Appeals
Fifth Circuit.

Sept. 1, 1961.

Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., Ramsey Clark, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., E. Coleman Madsen, U. S. Atty., Miami Fla., for appellant.

J. R. Wells, Orlando, Fla., for appellees.

Before CAMERON and BROWN, Circuit Judges, and HANNAY, District Judge.

CAMERON, Circuit Judge.

This interlocutory appeal involves the correct determination of the time of the taking of several parcels of land or interests therein to the end that such time may be fixed before the eminent domain proceedings are brought to the stage of ascertaining and fixing the amount of the damages. The lands and interests the appellant United States seeks to acquire by this action are to provide a strategic addition to the Orlando Air Force Base in Florida. The facts are not in dispute, being established by public records and stipulations entered into between the parties. The main facts and the court's opinion of the law are set forth in its order of May 16, 1960, from which this appeal is taken. The major portion of the order is copied here as a correct statement of what is before this Court:

"This cause coming on to be heard upon petition of Plaintiff for rehear-

ing of the Order entered herein on April 9, 1959, and also upon plaintiff's motion filed April 17, 1959, to amend said order of April 9, 1959, and also upon Plaintiff's further motion served May 6, 1960, and after hearing argument of counsel for the respective parties and upon due consideration the Court being fully advised in the premises, this Court finds and does hereby

"Order that, in view of the Court's desire to incorporate into its order the finding requested in said Motion to Amend and further in view of the filing herein on November 20, 1959, of the Declaration of Taking herein and of the filing on March 16, 1960, of the Third Amended Complaint herein, said Order of April 9, 1959, is hereby amended to read as follows:

" 'Defendant owners in 1942 leased over 500 acres of land to the United States. The leases embraced all tracts involved in this action, including tracts brought in by the amended complaint. The leases expired on June 30, 1953. The Government remained in possession of portions of the 500 acres.

" 'The Government on September 3, 1953 filed a complaint (Case No. 624 Orl.Civ.) for condemnation of a leasehold of 255.07 acres out of the aforementioned 500 acres. The condemned term was to end June 30, 1954, but included the provision that yearly extensions until June 30, 1958 could be obtained by the Government by filing 30-day notices of election. About four months after filing the complaint and on January 8, 1954, the Government filed a declaration of taking and paid $20,-135 into Court intended to cover the year ending June 30, 1954. The Government exercised its extension powers for an additional three years, the last of which ended June 30, 1957, and made further deposits for each year. The Government remain-

ed in possession as a holdover tenant after June 30, 1957.

" 'On July 2, 1957, the Government filed the original complaint herein, seeking to take the fee and easements in various tracts totalling 87.9 acres. All of the tracts except one were a part of the 255.07 acres mentioned above. Tract 414–E–2 was not included in Case No. 624 Orl.Civ. The tracts belonging to these defendants may be placed in the following categories:

[Paragraph omitted.]

" 'On October 2, 1958 the Government filed its first amended complaint in this case seeking to increase the estates taken as to Tracts 414–E–1 and 414–E–2 from temporary easements to terms of years for the same period. It also sought condemnation of additional temporary easements over Tracts 414–E–S and 414–E–9. In addition such amended complaint clarified a previous demand by setting up a claim for a temporary easement over Tract 420–E. The parties stipulate that Tract 414–E–6 was dismissed. The second amended complaint was filed December 8, 1958.

" 'On November 20, 1959, Plaintiff filed its declaration of taking herein, the estimated compensation [in the sum of $292,232.00] set out in said declaration of taking having been paid into court on November 19, 1959. On March 16, 1960, Plaintiff filed the third amended complaint herein.

" 'With the declaration of taking and the various amended complaints and the stipulations in the case the tracts now involved may be placed in the following categories:

" 'In Possession or Use on July 2, 1957, and named in original complaint

(Part of 255.07 acres)

" 'Fee

" '414–1 Acreage specified in original complaint (20.00) acres

changed by declaration of taking to 20.33 acres.

" '414–2 Description in original complaint charged and acreage enlarged by declaration of taking from 31.57 acres to 39.72 acres

" '414–E–7 Temporary easement of 15 years as sought in original complaint changed to perpetual easement by declaration of taking

" 'In Possession or Use on July 2, 1957 and Included in original complaint but not by same tract number as below (Not part of 255.07 acres):

" *'Easement*

" '422–E This narrow strip (0.11 acres) was a part of 414–E–2 included in original complaint. Most of 414–E–2 is no longer involved. The easement now sought is a perpetual easement instead of 15-year easement as originally sought.

" 'In Possession or Use on July 2, 1957, and first named in first amended complaint

" *'Easement*

" '414–E–9 (0.37 acres) Temporary easement sought by first amended complaint increased by declaration of taking to perpetual easement

" 'Not clear whether in Possession or Use Since June 30, 1953 but named in amended complaints

" *'Easement*

" '420–E (0.15 acres) Temporary easement sought by first amended complaint increased by declaration of taking to perpetual easement

" 'The Government has continued to use and assert possession of all the tracts, with the possible exception for a time of Tract 420–E and for a time of part of 414–2, and also continued in possession of other tracts included in the aforementioned Case No. 624 Orl.Civ. No order of possession has ever been obtained in Case No. 857 Orl.Civ. nor did the

Government file a declaration of taking prior to November 20, 1959, or make any deposit into Court prior to November 19, 1959.

" 'The foregoing substantially states the substance of the stipulation between the parties and adds the fact of the filing of the declaration of taking and of the filing of the third amended complaint. Respective counsel have requested the Court upon this statement of fact to determine the date of valuation of the several tracts. This for the reason that counsel may arrange proof in accordance with the issue defined by the Court.

" 'The Court therefore holds that November 20, 1959, the date of the filing of said declaration of taking, will be the date of valuation and the parties will submit proof of valuation as of such date.

" 'Pre-Trial Order hereafter to be entered in this cause will include this determination.'

[Paragraph omitted.]

"It is further ordered that Plaintiff's petition for a rehearing, except to the extent that it may have been granted by the foregoing amendment of said order of April 9, 1959, is hereby denied."

On its appeal the United States contends basically that the damages should be fixed as of July 2, 1957, the date of filing the present condemnation action, No. 857 Orl.Civ. The appellees contend that the court below fixed the correct date. We agree with the appellees and hold that the date fixed by the court below was the correct date for fixing the damages.

What constitutes a taking by the United States in the exercise of its sovereign power depends on many factors, including the wording of the applicable constitutional or statutory provisions and the relationship between the parties affected by the act of taking. In a recent annotation[1] dealing primarily with the

1. 36 A.L.R.2d at pages 447, et seq.

question of when interest on the award of damages should begin to run, but accepting that interest should be figured from the date of taking, the headings are enumerated under which the various times of taking have been established by various courts considering different states of facts.[2]

The Government relies chiefly on United States v. Dow, 1958, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109, reversing Dow v. United States, 5 Cir., 1956, 238 F.2d 898, as supporting its position. In that case the Government condemned an easement for a pipe line right of way acting under authority of the Second War Powers Act of 1942, 56 Stat. 177.[3] The strip of land, comprising 2.7139 acres through a body of 617 acres, was taken by the Government upon an order of court entered shortly after the filing of the condemnation petition, the order vesting right of immediate possession in the Government. Dow acquired his title to the strip more than two years after the United States had filed its condemnation proceedings and taken possession of the strip and laid the pipe line in it, and his title was taken subject to the condemnation proceedings.

The trial court granted summary judgment against Dow's claim to the money paid by the Government as compensation, holding that it violated the Anti-Assignment Act, 31 U.S.C.A. § 203. The Court of Appeals reversed, holding that the time of taking was fixed by the filing of a declaration of taking and the deposit of estimated compensation, which took place more than two years and seven months after the Government had entered into possession of the strip of land. This Court [4] held that the Declaration of Taking Act, 40 U.S.C.A. § 258a, had removed much of the uncertainty existing prior to its passage by fixing a definite time of taking and of accrual of the claim for compensation. The opinion stated, however, that nothing said in it should be construed as inconsistent with the equitable rule that, where the declaration of taking was filed on a date subsequent to the passing of possession to the Government, the value of the property should be determined as of the date possession was acquired. It relied heavily on the two cases of this Court cited in Footnote 4, supra.[5]

We do not consider the holding of the Supreme Court in Dow inconsistent with what the trial court did here. Dow stressed (357 U.S. at page 19, 78 S.Ct. at page 1042) that, under the terms of the Second War Powers Act, supra, the district court ordered the United States into the immediate possession of the

2. (a) The time of the appropriation and the entry on the property; (b) the time of the vesting of title; (c) the time of the filing of the declaration of taking; (d) the time of the notice of the intention to take; (e) the time of issuance of summons; (f) the time of filing of oath of appraisers; (g) the time of the injury to the property; (h) the time the property was actually entered upon and possession actually taken; and (1) miscellaneous dates based upon the peculiar facts of the individual case.

3. Which reads in part as follows: " * * The Secretary of War * * * may acquire * * * by condemnation, any real property, temporary use thereof, or other interest therein * * *. Upon or after the filing of the condemnation petition, immediate possession may be taken and the property may be occupied, used, and improved for the purposes of this Act, notwithstanding any other law."

4. In Dow v. United States, 5 Cir., 238 F. 2d 898, citing two Fifth Circuit Cases, 11,000 Acres of Land, etc. v. United States, 5 Cir., 152 F.2d 566, certiorari denied 328 U.S. 835, 66 S.Ct. 980, 90 L.Ed. 1611, and Anderson v. United States, 5 Cir., 179 F.2d 281.

5. In the case reported in 152 F.2d 568, it is stated: "We regard it as well settled that, either where no declaration of taking is filed or where, as here, the declaration of taking is filed on a date subsequent to the actual passing of possession, the market value of the property taken should be determined as of the date possession was acquired."

This same language was repeated in the latter case (179 F.2d at page 284) and several Supreme Court cases were cited as authority for the statement in each instance.

strip of land condemned, and that the United States entered into physical possession and began laying the pipe line across the tract within ten days of the filing of the petition, completing it in 1943. We quote a portion of the Supreme Court's opinion (357 U.S. at pages 20–21, 78 S.Ct. at page 1043):

"For it is undisputed that '[since] compensation is due at the time of taking, the owner at that time, not the owner at an earlier or later date, receives the payment.' Danforth v. United States, 308 U.S. 271, 284 [60 S.Ct. 231, 236, 84 L.Ed. 240]; cf. United States v. Dickinson, 331 U.S. 745 [67 S.Ct. 1382, 91 L.Ed. 1789]. We hold, contrary to the Court of Appeals, that the 'taking' did not occur in 1946 when the Government filed its declaration of taking, but rather *when the United States entered into possession of the land in 1943.* It follows that the landowners in 1943 were entitled to receive the compensation award and that Dow is not entitled to recover in this action." [Emphasis supplied.]

Following the foregoing quotation the court proceeded to define the two ways in which the United States normally takes property pursuant to its power of eminent domain (357 U.S. at pages 21–22, 78 S.Ct. at page 1044):

"Broadly speaking, the United States may take property pursuant to its power of eminent domain in one of two ways: *it can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings under various Acts of Congress providing authority for such takings.* Under the first method—physical seizure—*no condemnation proceedings are instituted,* and the property owner is provided a remedy under the Tucker Act, 28 U.S.C. §§ 1346(a) (2) and 1491, 28 U.S.C.A. §§ 1346(a) (2), 1491, to recover just compensation. See Hurley v. Kincaid, 285 U.S. 95, 104 [52 S.Ct. 267, 76 L Ed. 637]. Under the second

procedure the Government may either employ statutes which require it to pay over the judicially determined compensation before it can enter upon the land, Act of August 1, 1888, 25 Stat. 357, 40 U.S.C. § 257, 40 U.S.C.A. § 257 [the Declaration of Taking Act]; Act of August 18, 1890, 26 Stat. 316, 50 U.S.C. § 171, 50 U.S.C.A. § 171, or proceed under other statutes which enable it *to take immediate possession upon order of court* before the amount of just compensation has been ascertained. Act of July 18, 1918, 40 Stat. 904, 911, 33 U.S.C. § 594, 33 U.S.C.A. § 594; Title II of the Second War Powers Act of March 27, 1942, 56 Stat. 176, 177 (*employed by the Government in the present case*).

"Although in both classes of 'taking' cases—condemnation and physical seizure—title to the property passes to the Government only when the owner receives compensation, see Albert Hanson Lumber Co. v. United States, 261 U.S. 581, 587 [43 S.Ct. 442, 444, 67 L.Ed. 809], or when the compensation is deposited into court pursuant to the Taking Act, see infra, the passage of title does not necessarily determine the date of 'taking.' The usual rule is that if the United States has entered into possession of the property prior to the acquisition of title, it is the former event which constitutes the act of taking. It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues. See United States v. Lynah, 188 U.S. 445, 470–471 [23 S.Ct. 349, 357, 47 L.Ed. 539]; United States v. Rogers, 255 U.S. 163 [41 S.Ct. 281, 65 L.Ed. 566]; Seaboard Air Line R. Co. v. United States, 261 U.S. 299 [43 S.Ct. 354, 67 L.Ed. 664]. The owner at the time the Government takes possession 'rather than the owner at an earlier or later date, is the one who has

the claim and is to receive payment.' 23 Tracts of Land v. United States, supra, [6 Cir., 177 F.2d 967 at page] 970." [Emphasis added.]

These quotations from Dow emphasize the difference between that case and this one and, in our opinion, demonstrate the correctness of the judgment of the court below.

Nobody contends that the Government at any time resorted to the first method described in the Dow case,—physical seizure—and nobody takes the position that these appellees are relegated to the Tucker Act to recover the just compensation due them. The parties to this action started out leasing this land by private treaty. But, though this was true, the Government decided to supplement the contractual relationship by resorting to court proceedings under the Eminent Domain Statutes.[6]

Moreover, the Government filed its case No. 624 Orl.Civ. on September 3, 1953, and operated under that taking through the end of the term covered by it, June 30, 1957. Its petition there had asked for the entry of an order of condemnation, but no order was ever entered. In lieu of the order the Government, four months after it failed its petition, *filed a declaration of taking* and paid into the registry of the court the sum estimated by the Government as just compensation. It continued to deposit such payments to the end of the term named in its *declaration of taking.*

In that case, the court entered an order, which presumably, is the last one ever entered, in which the court retained jurisdiction of the case for the periodic determination of rental compensation to the end of the term, which was to be determined by the Government's election, and for the entry of a final judgment. The order provided further:

"In said final judgment the Court will also retain jurisdiction of this cause for the purpose of determining and making provision for the payment of just compensation for any failure on the part of Plaintiff when it surrenders the land to the Defendants on the expiration of the original term condemned and extensions thereof, to return the land in as good condition as that existing at the time of the Plaintiff originally entering upon the same * * *. In said final judgment, the Court will also retain jurisdiction for the purpose of determining and making provision for the payment of just compensation for any occupancy by the Plaintiff after the expiration of the terms which may be condemned or extensions thereof, whether such occupancy is in connection with making restoration of said premises or in connection with the exercise by the Plaintiff of its right to remove within a reasonable time after the expiration of the terms condemned or extensions thereof any and all improvements and structures placed thereon by or for the United States of America or for *whatever purpose said continued occupancy may be.*" [Emphasis added.]

That case, No. 624, is still pending and undisposed of and the parties to it—be-

---

6. E. g., the parties to this litigation entered into the contract for a term beginning April 1, 1942, and ending June 30, 1942, with right of renewal during the continuation of the national emergency then existing. Nevertheless, the Government, in November, 1943, began condemnation proceedings seeking possession by order of court of the identical estates it already had in the parcels of land. The only difference between the terms of the contract and the terms of the attempted condemnation was that, under the former, the Government had agreed to a rental of $5,347 per annum, whereas under the petition for condemnation, the Government estimated this compensation at the sum of $3,525 per annum. The Government deposited the amount of its estimate in court, but the court below held that the Government could not condemn property it already owned under contract when it sought only to reduce the amount of the annual rental payments. That action was affirmed by this Court, see United States v. 534.7 Acres of Land in Orange County, Florida et al., 5 Cir., 1946, 157 F.2d 828.

ing the identical parties to the present civil action—are still bound by the terms of the orders entered in it. The judicial record, therefore, refutes the suggestion that the parties before us were pursuing the seizure—Tucker Act route on July 2, 1957. The stipulation signed by the parties contained these words: "On July 2, 1957, the United States filed a suit to condemn (Case Number 857 Orl.Civ.) * * * The Plaintiff was in possession at the time of all of said tracts as it had a right to be under the provisions of the estate taken in Case No. 624 Orl.Civ. * * *"

The stipulation also stated: " * * * nor has the Government through any of its agencies notified the landowners that it has discontinued possession under Case No. 624 Orl.Civ. as to any part of said 25.07 acres. Nor has the United States, as Plaintiff in case No. 857 Orl.Civ., or otherwise, ever advised the landowners that it is in possession of any part of said land pursuant to case No. 857 Orl.Civ."

Under these undisputed facts it seems to us that the character of the possession by the United States of the interests in the lands sought to be condemned in this action (No. 857), filed July 2, 1957, was that fixed by the course of dealings between the parties, including the still pending judicial proceeding, No. 624. That possession bears no resemblance to the kind of possession the Government would have taken under the "physical seizure" method of obtaining possession which is discussed in the Dow case. Yet the entire thrust of appellant's argument is based upon the contention that the possession held by it on June 2, 1957 was one acquired by mere entry into physical possession, leaving the assumption that

the appellees may pursue the remedy given them under the Tucker Act.[7]

To the above should be added the fact, also undisputed, that the acreage taken in fee and the estates carved out of the several parcels by the declaration of taking of November 20, 1959 differed materially from the acreage and estates described in the original complaint filed July 2, 1957. To take care of these changes the Government had filed two amendments to its original complaint, and filed a third amended complaint after the declaration of taking so as to conform the pleadings in the condemnation suit to the lands and estates actually acquired in the declaration of taking.

It is clear that the Government was uncertain as to exactly what it wanted until the time it filed the declaration of taking November 20, 1959. It was in full control of the pending litigation and could have entered an order of possession at any time, and could thereby have fixed the date as of which compensation should be figured. But it did not do that. It chose to proceed, under the Declaration of Taking Act, 40 U.S.C.A. § 258a et seq., to file the declaration in the pending litigation and thereby to fix the exact date of taking and the precise lands and estates acquired by it. Not until that time had it determined exactly what it desired to appropriate, and not until that time did it perform any overt act fixing the extent and terms of its appropriation and the precise rights of the landowners to compensation.[8]

We think it is clear that the first appropriation or taking which fixed the right of the United States to possess and of the landowners to collect just compensation was the declaration of taking

7. E. g., this statement appears in the appellant's brief: "The basic premise on which the Dow case rests is that the United States 'can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings. * * *'"

8. See, in addition to Dow, Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240; United States v. Westing-

house Electric & Manufacturing Co., 339 U.S. 261, 70 S.Ct. 664, 94 L.Ed. 816; Kimball Laundry Co. v. United States, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765, and Benedict v. City of New York, 2 Cir., 98 F. 789; and cf. Goodyear Tire & Rubber Co. v. United States, 276 U.S. 287, 48 S.Ct. 306, 72 L.Ed. 575; and Olson v. United States, 292 U.S. 246, 254, 54 S.Ct. 704, 78 L.Ed. 1236.

of November 20, 1959, and that the court below correctly fixed that date as the time of taking.

The judgment of the lower court is, therefore, affirmed and the cause remanded for further proceedings consistent with this opinion.

Affirmed and remanded.