**Jose Leon Guerrero CALVO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17568.**

United States Court of Appeals
Ninth Circuit.

June 5, 1962.

Finton J. Phelan, Jr., Agana, Guam, and Thomas W. Flynn, Honolulu, Hawaii, for appellant.

Ramsey Clark, Asst. Atty. Gen., H. G. Homme, Jr., U. S. Atty., Agana, Guam, Roger P. Marquis, Harold S. Harrison, and S. Billingsley Hill, Attys., Department of Justice, Washington, D. C., for appellee.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

JERTBERG, Circuit Judge.

Before us is an appeal by the landowner from a final judgment in condemnation entered July 27, 1961, by the District Court of Guam for the Unincorporated Territory of Guam. The jurisdiction of the District Court is based on Title 28 U.S.C. § 1345, and the jurisdiction of this Court rests upon Title 28 U.S.C. §§ 1291 and 1292.

The complaint states that the use for which the property is to be taken is for the use and benefit of the United States in the construction, operation and maintenance of utilities, drainage ditches, and roads for military and naval purposes, and that the interest in the property to be acquired is an easement in perpetuity in, on and over the described property for the placement, replacement, creation and maintenance of water pipelines, oil, gas and fuel pipelines, drainage systems, roads, highways, power transmission lines and telephone lines, together with all rights of ingress and egress for the purpose of exercising said easements.

Approximately 16.4 hectares of land, consisting of four tracts in two ownerships, are described in the complaint filed August 1, 1958, and in the declaration of taking filed August 7, 1958. The judgment appealed from covers only the two tracts in the ownership of the appellant. These are Tract 1A, containing approximately 7.25 hectares, acquired for a roadway, and Tract 1B, containing 93 square meters, acquired for a drainage ditch, both of which tracts are in Lot 401 in the Municipality of Agat and have been in appellant's ownership since prior to 1947.

The authority for the institution of condemnation proceedings is Public Law 155, 82nd Congress, approved September 28, 1951, 65 Stat. 336. Funds for the acquisition were appropriated by Public Law 254, 82nd Congress, approved November 1, 1951, 65 Stat. 760.

During the trial to determine the just compensation to be paid to appellant for the imposition of perpetual easements placed on appellant's lands, the District Court took judicial notice of the records of earlier condemnation proceedings in the District Court of Guam relating to the same lands included in the case before us.

These earlier proceedings were instituted by the Naval Government of Guam pursuant to the authority of Public Law 594, 79th Congress, approved August 2, 1946, 60 Stat. 803, and the allocation of leasehold money by the Bureau of Supplies and Accounts, Navy Department, to the Governor of Guam.

The estate or interest taken in appellant's lands under each of the earlier proceedings was a leasehold for a term of one year, and the public use for which each annual leasehold was taken was for the "Base Development Program of the United States of America in Guam."

The term of the first, or earliest, leasehold began July 1, 1946, and terminated June 30, 1947. The term of the second leasehold began July 1, 1947, and terminated June 30, 1948. The term of the third leasehold began July 1, 1948, and terminated June 30, 1949. The term of the fourth leasehold began July 1, 1949, and terminated June 30, 1950. The term of the fifth, or final, leasehold began July 1, 1950, and terminated June 30, 1951.

The declarations of taking, under the authority of which the five annual leaseholds were taken, contain no provisions for the extension or renewal of the term of the leasehold estate. It is to be noted that the term of the last leasehold expired and terminated on June 30, 1951. The United States concedes that no interest or estate of the United States in and to the lands here involved appears of record from July 1, 1951 until the filing of the declaration of taking in the instant case on August 7, 1958, a period slightly in excess of seven years. It appears from the record in this case that prior to 1949, the military forces of the United States bulldozed a dirt road, known as Route 17 or the "cross-island road," to connect Apra Harbor on the west coast of Guam with Camp Witek located on the east coast of Guam, which dirt road bisected the lands of the appellant included in this proceeding. The purpose of the construction of the road was to move material from Apra Harbor to Camp Witek and thus avoid a then existing circuitous route. It further appears that the dirt road received some maintenance in 1953 and was hard-surfaced in 1955. While the record is silent as to who did such maintenance and hard-surfacing in 1953 and 1955, we assume that such work was done by the United States. We glean from the record that since the construction of the road, it has been used not only by the military but by the general public. Insofar as we can discover from the record, no buildings, structures, or facilities were ever erected or placed on appellant's lands, the sole improvements to appellant's lands being the construction of the road and perhaps a drainage ditch.

In the findings of fact, the District Court found, among other facts, the following:

1. That sometime in the year 1949, persons acting for and in be-

half of the United States of America entered upon and constructed a road and appurtenant drainage ditches over 7.2617 hectares of said Lot No. 401, Municipality of Agat, Territory of Guam;

2. That by virtue of the provision of the Declaration of Taking Act (46 Stat. 1421; 40 U.S.C. 258a) said easement in perpetuity vested in the United States of America on the 7th day of August, 1958;

3. That the taking of this easement in perpetuity is tantamount to taking an interest in fee in the said lands in question and the proper measure of compensation is the value of the fee at the time of taking;

4. That the value of said land is to be determined as of 1949, when possession was acquired, and not in 1958, when the instant proceedings were instituted (United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109); and

5. That as of 1949, the fair market value of the said land in question was thirty and 00/100 ($30.00) Dollars per hectare.

In fixing "as of 1949" as the time for the determination of just compensation to be paid to appellant for the perpetual easements imposed on his lands, the District Court relied wholly on the decision of the Supreme Court in United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958). Appellee relies on the same decision to support the correctness of the District Court's action, although, for other reasons to be considered later in this opinion, appellee argues that it is immaterial whether 1949 or August 7, 1958 is chosen as the date of valuation.

Since the District Court considered the Dow case controlling and required it to accept the year 1949 as the date of valuation, it becomes necessary to analyze the facts in that case and the principles of law which the Court stated were applicable thereto.

The principal question presented to the Supreme Court in Dow, as stated by the Supreme Court, "is whether the claim to 'just compensation' vested in the owners of the land at the time the United States entered into possession of the easement pursuant to court order in 1943 or whether such claim vested in the respondent, Dow, who acquired the land in 1945, at the time the United States filed a declaration of taking in 1946, under the Declaration of Taking Act of February 26, 1931, 46 Stat. 1421, 40 U.S.C. §§ 258a–258e [40 U.S.C.A. §§ 258a–258e]."

The facts, as stated by the Supreme Court, are:

"In March 1943 the United States instituted a condemnation proceeding in the District Court for the Southern District of Texas to acquire a right-of-way for a pipe line over certain lands in Harris County, Texas, owned by the estate and heirs of John F. Garrett and James Bute. Among the lands condemned was Parcel 1, a narrow strip of some 2.7 acres out of a 617-acre tract, the property involved in the present suit. The Government proceeded under various statutes, including the Act of August 1, 1888, 25 Stat. 357, 40 U.S.C. § 257, [40 U.S.C.A. § 257], and Title II of the Second War Powers Act of March 27, 1942, 56 Stat. 176, 177. As requested in the petition, the District Court ordered the United States into the 'immediate possession' of this strip. Within the next ten days the United States entered into physical possession and began laying the pipe line through the tract. The line was completed in 1943 and has been in continuous use since that time.

"In November 1945 the 617-acre tract was conveyed to Dow by a general warranty deed which specifically excepted the pipe-line right-of-way as being subject to the condemnation proceedings. In May 1946 the Government filed a declaration of taking, under the Declaration of Taking Act,

covering this pipe-line strip. Estimated compensation was deposited in court and judgment on the declaration of taking was entered. * *."

It was the contention of Dow "that although there was an entry into possession in 1943 which was an appropriation of the property sufficient to amount to a 'taking,' the subsequent filing of a declaration of taking vitiated the effect of the earlier entry, and rendered the filing date the time of the taking." United States v. Dow, supra, p. 22, 78 S.Ct. p. 1044.

■■ The contention of Dow was rejected. In rejecting such contention, the Supreme Court stated, at p. 23, 78 S.Ct. p. 1045:

"The scheme of the Taking Act makes it plain that when the Government files a declaration before it has entered into possession of the property the filing constitutes the 'taking.' But neither the language nor the history of the Act provides a reliable indication as to the intention of Congress in cases, such as the one before us, where a declaration is filed *after* the Government has taken possession. Nevertheless, a number of considerations have led us to the view that in such cases the date of 'taking' is the date on which the Government entered and appropriated the property to public use." (Emphasis in quoted material.)

Appellee's reliance on Dow is stated, as follows:

"So far as the individual landowners are concerned, the Government's use and possession of the lands involved for roads and utilities between July 1, 1951 and the filing of the instant action on August 1, 1958, can be characterized as an 'estate not of record,' an expression used in other cases involving similar factual situations. The Government's possession and use during that period were under the 'physical seizure' method as distinguished from the

condemnation proceedings method of exercising the federal domain power. United States v. Dow, 357 U.S. 17, 21 [78 S.Ct. 1039, 2 L.Ed.2d 1109] (1958)."

In stating that the Government's use and possession of appellant's land between July 1, 1951 and the filing of the instant action on August 1, 1958 were under the "physical seizure" method, the Government recognizes, as it must, that the Government's use and possession of such land during the terms of the successive annual leases were not under the "physical seizure" method. The clear implication of such statement is that the District Court erred in fixing "as of 1949" as the date of valuation. If there were a taking by "physical seizure" on July 1, 1951, then, under Dow, such date is the date of valuation. What interest or estate was held by the Government in appellant's land on July 1, 1951? Its last leasehold expired by its own terms on June 30, 1951. Under well established principles of law relating to landlord and tenant, the interest or estate of the Government ceased upon the expiration of the term of the leasehold estate. On July 1, 1951 appellant owned the subject property in fee, improved by a dirt road, and unincumbered by any interest or estate in appellee.

However, we are unable to agree that any use or possession of appellant's land by the Government during the period July 1, 1951 to August 1, 1958 was an appropriation sufficient to amount to a "taking." There is no evidence in the record indicating acts of possession by the Government from June 30, 1951 to the year 1953, although casual reference is made in the record to the fact that repairs were made in this latter year, but whether such repairs were made on the part of the road on appellant's land or elsewhere is not disclosed. There is no evidence in the record indicating acts of possession by the Government from 1953 to 1955, except it appears from the record that the road was hard-surfaced in 1955. There is no evidence in the record indi-

cating acts of possession by the Government in 1956, 1957 or in 1958 prior to the filing of the declaration of taking on August 7, 1958. There is evidence in the record that the road was used by Government contractors and the general public. For aught that appears in the record, such use was at the sufferance of appellant.

It is clear to us, as it was to the Court in United States v. McCrory Holding Company (a case somewhat similar to the facts of the instant case) that the use and activity of the Government in relation to the road from July 1, 1951 to August 1, 1958 "bears no resemblance to the kind of possession the Government would have taken under the 'physical seizure' method of obtaining possession which is discussed in the Dow case." 294 F.2d 812, at p. 818 (5th Cir., 1961).

■ In our view, the District Court's reliance on Dow was misplaced. We hold that the District Court erred in fixing "as of 1949" as the date of valuation. We hold that the correct date of valuation is as of August 7, 1958 on which date the declaration of taking was filed in the instant case.

We now consider appellee's argument that it is immaterial whether the valuation date be fixed "as of 1949" or August 7, 1958. This argument has two facets. Both are predicated on the premise that the increase in value of appellant's land between said dates was solely attributable to the dirt road constructed by the Government in 1949 when it was in possession of appellant's land under a one-year lease based upon the declaration of taking of a leasehold estate of that duration.

■ Upon the first facet of this argument, appellee contends that it is not required, on condemnation of an interest in property, to pay any enhanced or increased value created by expenditures made during a pre-existing occupancy by the Government. To require such payment, appellee argues, would "constitute an unwarranted windfall at the expense of the public treasury."

Insofar as the record discloses, the only expenditure made by the Government during the pre-existing occupancy under the leasehold estates (July 1, 1946 through June 30, 1951) was for the construction of a dirt road across appellant's property. None of the declarations of taking placed any obligation upon the Government to restore the land to its former condition on, before, or after the expiration of the term therein stated. Presumably the Government could have plowed up the roadway and rendered it impassable if it so elected, but it could not separate the road from the land. For reasons unknown to us, the Government elected to permit the term of the last leasehold to expire without extension or renewal of the term thereof, without acts of appropriation sufficient to constitute a "taking," or without filing a declaration of taking until August 7, 1958. From such inaction on the part of the Government, it must be concluded that the purposes for which the leasehold estates were acquired had been accomplished. Upon expiration of the term of the last leasehold estate appellant's land was free from the possessory interest created by the declarations of taking. We are aware of no case which even suggests that the subsequent filing of a declaration of taking (in this case, years later) operates to revive a possessory interest which once existed, absent continuous possession or equitable considerations not appearing here. We find no substance to the "windfall" phase of appellee's argument when viewed in the light of the facts appearing in the record.

■ The second phase of appellee's argument is an attempt to invoke the doctrine announced in United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), and in many other cases including the last expression thereof in the case of United States v. 158.76 Acres of Land, etc., 298 F.2d 559 (2nd Cir., 1962). This doctrine, as stated in United States v. Miller, supra, at p. 376, 63 S.Ct. at p. 281, is as follows:

"If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

"The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities."

In urging the application of such doctrine, appellee contends that the land of appellant was within the project authorized by Congress in Public Law 594, 79th Congress, approved August 2, 1946, and that the same project was authorized in Public Law 155, 82nd Congress, approved September 28, 1951.

Public Law 594, in pertinent part, provides:

"The Secretary of the Navy is hereby authorized to acquire in the name, and for the use, of the United States, by purchase or otherwise, land and rights pertaining thereto situated on or within the island of Guam, including interests in fee, leasehold interests with or without option to purchase interests in fee, and rights-of-way and easements both temporary and perpetual for highways, drainage system, water supply and water distribution facilities, power lines, communication systems, and communication distribution facilities, upon conveyance of title acceptable to him or such other officer as he may designate * * *."

It is under that Law that the earlier condemnation proceedings were instituted. The first declaration of taking of a leasehold estate was for the period July 1, 1946 through June 30, 1947. This declaration of taking was followed by the filing of four subsequent declarations of taking under which the Government acquired annual leasehold estates, the last one expiring June 30, 1951.

Assuming that the broad language of Public Law 594 authorized a "project," we acknowledge that the appellant's land was within the "project" and probably would be condemned since the Secretary of the Navy was authorized to acquire, by purchase or otherwise, land and rights pertinent thereto "situate on or within the Island of Guam." (Emphasis ours.) Under such reasoning, every parcel of land in private ownership situate on or within the Island was within the "project."

Appellee makes no contention that the lease rental paid to appellant was based on any enhanced value arising from the fact that appellant's land probably would be condemned.

Since the Government permitted the term of the last leasehold estate to expire on June 30, 1951, it would reasonably appear that appellant's land was no longer required for or within the "project" authorized by Public Law 594.

The instant proceedings were instituted pursuant to Public Law 155, 82nd Congress, approved September 28, 1951. This Law, in pertinent part, provides:

"TITLE II

"Sec. 201. The Secretary of the Navy, under the direction of the Secretary of Defense, is authorized to establish or develop naval installations and facilities by the construction, conversion, installation, or equipment of temporary or permanent public works, including buildings, facilities, appurtenances, and utilities, as follows: * * *

"OUTSIDE CONTINENTAL UNITED STATES"

"FLEET FACILITIES

* * * * * *

"Naval Operating Base, Guam, Marianas Islands: Tracks for gantry crane; $227,700.

* * * * * *

"AVIATION FACILITIES

"Naval Air Station, Agana, Guam, Marianas Islands: Additional aviation facilities; $4,697,100.

* * * * * *

"COMMUNICATION FACILITIES

"Naval Communication Station, Guam, Marianas Islands: Permanent communication facilities; $2,-323,350.

"MEDICAL FACILITIES

"Naval Operating Base, Guam, Marianas Islands: Dental clinic building; $386,000.

* * * * * *

"YARDS AND DOCKS FACILITIES

"Guam, Marianas Islands: Acquisition of easements for roads and utilities, $385,000 * * *."

Appellee argues that the instant proceeding, while instituted pursuant to the authority conferred by Public Law 155, was in connection with the same "project" authorized by Public Law 594 and, hence, that the Government ought not to pay any increase in value arising from the fact that appellant's land was within the "project" authorized under Public Law 594.

We do not agree. No "program" or "project" is mentioned or described in Public Law 594. However, the area mentioned was Island-wide. The only portion of Public Law 155 pertinent to our present discussion appears under the title "YARDS AND DOCK FACILITIES" above mentioned. Under such heading appears, "Guam, Marianas Islands: Acquisition of easements for roads and utilities, $385,000." It is to be noted that no area of the Island of Guam is specified for the "project." No landowner on the Island of Guam could be expected to know that his land was within the "project." There is no language in Public Law 155 which ties in the "Acquisition of easements for roads and utilities, $385,000" with the "project" authorized by Public Law 594.

In our view, appellee's reliance on the doctrine stated in United States v. Miller, supra, is misplaced. The doctrine has no application to the facts presented in the instant case.

The final judgment of condemnation appealed from is reversed, and the cause remanded to the District Court for further proceedings consistent with the views herein expressed.

■ On retrial, we suggest that the measure of appellant's detriment should be the difference, if any, between the fair market value of his land immediately before and after the perpetual easements were imposed by the taking. See United States v. Glanat Realty Corp., 276 F.2d 264 (2nd Cir., 1960); United States v. 765.56 Acres of Land, etc., 174 F.Supp. 1, (E.D. New York, 1959).