### UNITED STATES v. EDDINGS et al.

#### No. 67.

District Court, E. D. Washington, S. D.

Aug. 17, 1943.

Edward M. Connelly, U. S. Atty., and Edward J. Crowley and B. H. Ramsey, Sp. Attys. for Department of Justice, all of Spokane, Wash., for petitioner.

E. A. Davis, of Pasco, Wash., for defendants J. F. Fuller and Amanda Wellman.

Karl J. Grimm, of Pasco, Wash., for Franklin County.

SCHWELLENBACH, District Judge.

There remains for decision in this case but one question. That is whether the judgment in favor of Franklin County for taxes should include interest to date or whether such interest should stop as of the date of the filing of the declaration of taking and the deposit of funds under 40 U.S.C.A. § 258a. The declaration of taking was filed and the deposit made on June 29, 1942. The County's claim for taxes was not filed until June 8, 1943. Clearly, if the interest is allowed to the County, it must be deducted from the amount paid to the landowner because the statute, 40 U.S.C.A. § 258a, provides: " * * * but interest shall not be allowed on so much thereof as shall have been paid into the court." The State statute, Rem.Rev.Stat. of Wash. § 11244, provides: "One-half of all taxes upon real property made payable by the provisions of this act shall be due and payable to the treasurer as aforesaid on or before the thirty-first day of May in each year, after which date such one-half shall become delinquent, *and interest at the rate of ten per cent per annum shall be charged upon such unpaid taxes from the date of delinquency until paid;* the other one-half of such taxes shall be due and payable to the treasurer as aforesaid on or before the thirtieth day of November in each year, after which date such remaining one-half shall become delinquent, *and interest at the rate of ten per cent per annum shall be charged upon such unpaid taxes from the date of delinquency until paid.*"

The amount of interest involved in this particular case is very small. However, the United States Government now has pending in this court, or has made public announcement of its intention to file in this court, condemnation proceedings involving almost three-fourths of a million acres of land and involving eight to twelve thousand individual parties. The situation thus created makes desirable the announcement of a rule which this court will follow governing the question of interest on taxes. The right of the court to pass upon this is found in the last sentence of the Declaration of Taking Statute, 40 U.S.C.A. § 258a, which reads: "The court shall have power to make such orders in respect

of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

Two District Courts have held that it was "just and equitable" to compel the property owner to pay interest on delinquent taxes after the deposit of the money by the Government in the court. United States v. Certain Land in the City of St. Louis, Mo., D.C., 29 F.Supp. 92; United States v. Certain Parcels of Land in Mifflin Township, Allegheny County, Pa., D.C., 47 F.Supp. 333. The St. Louis case was cited with approval by the Circuit Court of Appeals for the Second Circuit. United States v. Certain Lands in the Borough of Brooklyn, 129 F.2d 577. The latter case, however, is distinguishable because it involved interest upon a note which was secured by a mortgage upon condemned property, the note being a personal obligation which the landowner was compelled, to pay regardless of his ownership or lack of ownership in the real estate. It presented an entirely different question than one in which taxes are involved. The two District Court cases were decided upon the theory that the landowner knew of the taxes, that he should have taken advantage of the provision of the statute, 40 U.S.C.A. § 258a, reading: "Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding." The position of the two judges who so decided is succinctly stated in the case of United States v. Certain Parcels of Land in Mifflin Township, Allegheny County, Pa., supra [47 F.Supp. 334], as follows: "The County of Allegheny contends that interest on the taxes which were liens at the time of the condemnation should be paid from the time of the condemnation until the time of payment. The United States agrees to this position. This position is sustained in United States v. Certain Land in the City of St. Louis, Mo., D.C.E.D.Mo.1939, 29 F.Supp. 92, and also in United States v. Certain Lands in Borough of Brooklyn, Kings County, State of New York et al., 2 Cir., 1942, 129 F.2d 577. This position is just and equitable. The petitioner could have requested the payment of these taxes, including the interest thereon, when the land was taken, or at any time thereafter, or he could have stopped the accruing of interest by payment of the taxes."

I have no quarrel with either of these two decisions. Undoubtedly what was done in each of those particular cases was just and equitable. I realize that usually the determination of what is just and equitable must be based upon the facts of a particular case. That does not mean, however, that where the situation requires it, justice and equity cannot be secured by the adoption of a rule governing an entire class of cases. Such a situation now exists in reference to condemnation cases in this District. Of the land the Government is condemning, several hundred thousand acres are undeveloped. The amounts deposited per acre are small. The parties owning such land, numbering in the thousands, live in all parts of the United States. The fact is that in these cases many months elapse between the date of the filing of the declaration of taking and the service of notice upon the landowner. In practically all of the cases, possession has been secured by the Government under the War Powers Act, 50 U.S.C.A. § 171, 50 U.S.C.A.Appendix, § 632, many months prior to the filing of the declaration of taking. It may very well be said in some cases that the duty rests with the landowner to petition the court that the taxes immediately be paid out of the deposit. I am convinced that to so hold in this District, under the circumstances and conditions now existing, would be both unjust and inequitable. It would be utterly unreasonable to expect the eight to twelve thousand individual parties to present such petitions so as to cut off the running of interest upon taxes. An incidental, though in no sense controlling consideration, is the probable court congestion resulting from the presentation, signing and filing of the papers and the making of checks in payment of the thousands of tax items.

On the other hand, the counties to which the taxes are due have the facilities with which to ascertain the amounts of taxes due. The staffs of the county offices will not be overburdened with the preparation of a blanket petition in each of the cases involving the taxes upon all of the property for which tax claim is made. In a relatively short time after the filing of declarations of taking, without any exceptionally burdensome effort, the counties can avail themselves of the provisions of the act and have paid into their treasuries the tax moneys to which they are entitled. The only detriment to the counties is that they

will be deprived of the ten per cent interest which the state statute provides. I might add that I do not feel that it is particularly just or equitable to permit the counties to draw interest at that rate upon funds that are at all times available to them in the Registry of the Court.

I am writing this opinion in order that the officers of the various counties may know that they are expected to make application for the payment of these taxes and that no interest is accruing thereon after the deposit of the money. I will expect the attorneys for the Government to cooperate fully with the officers and attorneys for the counties in order that these tax moneys may be paid with reasonable expedition.

I can assure the county officials of such cooperation because of my experience with the representatives of the Lands Division of the Department of Justice. They are always willing and anxious to cooperate. I wish I might say as much for the representatives of other agencies of Government which occupy the position of clients of the attorneys in the Lands Division in these condemnation cases. They should be aware of the responsibility of the sovereign to the individuals whose property is being taken. I fully appreciate that emergent war conditions make inescapable situations in which too meticulous attention cannot be paid to the comforts or convenience of the ordinary citizen. Those in charge of the prosecution of war cannot stop to make certain that the ordinary peace time conditions or activities of civilians remain undisturbed. The sovereign has the power and the duty to make use of the property of the individual when such use is necessary for its protection. Those who exercise that power should not be insensitive to the fact that those from whom they take property are members of the political community which is the sovereign. Therefore, even in war time, those charged with the responsibility of government must recognize the need for them to maintain public confidence in the fairness of the sovereign. Failing in that, they might endanger the entire structure upon which sovereignty rests. It might be well were they to heed the early warning of the Supreme Court (Chisholm v. Georgia, 2 Dall. 419, 455, 1 L.Ed. 440) of the "perversion" resulting when the "ministers" of the people "have wished, and have succeeded in their wish, to be considered as the sovereigns of the state."