UNITED STATES of America

v.

CERTAIN LAND IN the CITY OF PATERSON, COUNTY OF PASSAIC, STATE OF NEW JERSEY, et al., Three Hundred Straight Street, Appellant.

No. 14373.

United States Court of Appeals Third Circuit.

Argued June 21, 1963.

Decided Sept. 24, 1963.

William Sellinger, Passaic, N. J. (Sellinger & Chester, Passaic, N. J., on the brief), for appellant.

Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C. (Ramsey Clark, Asst. Atty. Gen., David M. Satz, Jr., U. S. Atty., James D. Butler, Asst. U. S. Atty., Newark, N. J., on the brief), for the United States.

Edward F. Merrey, Jr., Paterson, N. J. (Merrey & Merrey, Paterson, N. J., on the brief), for defendants-appellees Benjamin Eastwood, Jr., Samuel T. Messner, Jr., and Marion E. McCulloch, trustees.

Before BIGGS, Chief Judge, STALEY, Circuit Judge, and STEEL, District Judge.

BIGGS, Chief Judge.

This is an appeal from an order of the court below entered January 14, 1963, denying a motion of the appellant, Three Hundred Straight Street, Inc., (Three Hundred), the former owner and mortgagor of certain real estate in the City of Paterson, New Jersey, taken by the United States by condemnation proceedings. The motion was to alter or amend an order entered by the same court on October 18, 1962, awarding interest on the mortgage debt to the time of payment to Benjamin Eastwood, Jr. and others, assignees trustees (Trustees) of the mortgage.

On December 4, 1961, the United States commenced a condemnation proceeding in the court below to take land owned by Three Hundred. As provided by 40 U.S.C.A. § 258a,[1] the United States

---

1. Section 258a, 40 U.S.C.A., provides in pertinent part:

"In any proceeding in any court of the United States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the United States for the acquisition of any land or easement or right of way in land for the public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking * * *.

"Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. * * *

"Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. If the compensation finally awarded in respect of said lands, or any parcel thereof, shall exceed the amount of the money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency.

"Upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon

filed a "Declaration of Taking" on the same day and on December 5, 1961 deposited with the court $450,000. as the estimated just compensation for the condemned property. Three Hundred was made a party to the proceedings as were various other interested parties but, by an oversight, the Trustees were not made parties to the proceeding. Apparently they did, however, have actual notice of it. On January 22, 1962, the court below entered an order for delivery of possession to the United States. On January 26, 1962, possession was duly transferred to the United States.

On March 8, 1962, Three Hundred moved for an order authorizing the withdrawal of $298,768.36 from the registry. This sum represented the difference between the total amount on deposit, $450,-000. and the outstanding principal of the mortgage debt, viz., $151,231.64. On March 9, 1962, the Trustees appeared in the action and moved for an order permitting the withdrawal of the amount of the mortgage principal with interest at the contract rate of 5% per annum from January 1, 1962, to the time of payment.[2]

On March 26, 1962, a hearing was held on the two motions. Counsel for Three Hundred and counsel for the Trustees were present. An attorney representing the United States was also present. Three Hundred objected to the Trustees' claim for interest.[3] It was agreed, however, to postpone argument on the interest issue to a later date and to withhold payment of the contested sum until determination of the question. The con-

testing parties were in agreement respecting the allocation and distribution of the remainder of the fund, but it was not until June 6, 1962 that an order was entered authorizing payment of this amount from the registry.

Three Hundred asserts that the United States was responsible for this delay because it refused to consent to distribution until a security bond had been posted to cover any possible deficiency judgment. The record supports this contention to some extent.[4] The court below never made a specific finding on this point. Findings of fact, however, were not necessary for the disposition of this appeal as will hereinafter appear.

On June 22, 1962, the Trustees moved for the withdrawal of the sum of $3,381.-65 representing 5% interest on the principal balance of the mortgage debt from January 1, 1962 to June 11, 1962.[5] A hearing was held on this motion; resulting in an order filed on October 18, 1962, granting the movants the relief sought, and a brief letter opinion from the district judge. In this letter the judge stated that inasmuch as the Trustees had not been notified of the proceedings they could not have been expected to apply for payment sooner than they actually did. The court expressed the view that ordinarily an application for payment would be sufficient to stop the running of interest but that this rule should not apply where as here the application had been opposed by Three Hundred to the extent of the interest claim, resulting in delay. The court concluded that the Trustees had acted with

which the parties in possession shall be required to surrender possession to the petitioner. The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

2. The last payment made had included interest through December 31, 1961.

3. Three Hundred not only objected to the Trustees' claim for interest from January 1, 1962, but also claimed a credit for interest already paid which had accrued after the time the United States filed the

"Declaration of Taking." This contention was later abandoned and is not involved in this appeal.

4. The shareholders of the appellant corporation did in fact file security bonds in the period between the hearing and the final order. Beyond this, however, the record is unclear concerning the cause for the delay.

5. It appears that although the order releasing the funds was entered on June 6, 1962, it was not until June 11, 1962 that Three Hundred actually received payment.

"due diligence and dispatch" and under the circumstances it was "just and equitable", within the meaning of that phrase as used in 40 U.S.C.A. § 258a, that they be awarded interest to the time of payment. The court bottomed its decision on United States v. Certain Lands in Borough of Brooklyn, 129 F.2d 577 (2 Cir., 1942), to the effect that a mortgagee was entitled to interest on the principal sum to the date of payment as opposed to the day when title vested in the United States, here December 5, 1961.

On October 29, 1962, Three Hundred filed a timely motion under Rule 59(e), Fed.R.Civ.Proc., 28 U.S.C.,[6] to alter or amend the order of October 18, 1962. At the hearing on this motion Three Hundred asserted (1) that the United States was responsible for the long delay between the hearing of March 26, 1962, and the entry of the withdrawal order on June 6, 1962, and that therefore the Government should bear an interest burden on the whole fund for this period and (2) that, as between Three Hundred and the Trustees, the court should decree that the running of interest cease as of March 26, 1962. The court dismissed summarily the contention that the United States should be charged with interest for this period and this issue is not raised on this appeal[7] and is therefore not before us.[8] The court below took under advisement, however, Three Hundred's contention that it should not be liable for interest after March 26, 1962 because of the delay. By a letter opinion, filed on December 4, 1962, the district judge denied Three Hundred's motion stating only that the record indicated that argument on the interest issue was postponed through the joint consent of Three Hundred and the Trustees.

An order in accordance with this letter was filed on January 14, 1963. Technically, this is the order appealed from.

■ A preliminary question concerning our jurisdiction must be determined, though not raised by the parties. This appeal has been taken from the order of January 14, 1963, denying the motion under Rule 59(e), Fed.R.Civ.Proc., 28 U.S.C. to alter or amend the previous order of October 18, 1962 rather than from that order itself. But the order of January 14, 1963 is not appealable, the dispositive action of the court being embodied in the October 18th order. See Bass v. Baltimore & O. Terminal R. Co., 142 F.2d 779 (7 Cir.), cert. denied, 323 U.S. 775, 65 S.Ct. 135, 89 L.Ed. 619 (1944). Cf. Greenwood v. Greenwood, 224 F.2d 318 (3 Cir., 1955).

The fact that Three Hundred appealed from the wrong order, however, does not deprive us of jurisdiction. Where it is clear that a party has simply made an inartificial attempt to obtain review of a prior judgment or order, courts have accepted the appeal under the doctrine of harmless error and treated the appeal as if taken from the original and correct order. See Greenwood v. Greenwood, supra; Milton v. United States, 120 F.2d 794 (5 Cir., 1941); 6 Moore, Federal Practice, 2d ed. 1953, pars. 59.15[1] and [4]. The circumstances at bar present such a situation. An examination of the issues involved clearly reveal an intent on the part of Three Hundred to attack the original order. We therefore treat the present appeal as if arising from the order of October 18, 1962.

■ The Trustees contend, however, that even if the appeal be so treated, it is not timely. This is an erroneous con-

---

6. Rule 59(e) provides: "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." While the motion was filed on the eleventh day, it was still timely since the tenth day was a Sunday. See Rule 6(a).

7. The "Statement of Question Involved" set out in Three Hundred's brief and the point argued by it is limited to the issue

of whether the court below erred in allowing interest on the mortgage to run as between the mortgagor and the mortgagee.

8. Rule 24(2)(b) of this court provides that ordinarily no point will be considered which is not set forth or necessarily suggested by the statement of questions involved and that the foregoing requirement is "to be considered in the highest degree mandatory."

tention. Rule 73(a) provides a period of sixty days for an appeal by any party in any action in which the United States is a party. Three Hundred's timely motion under Rule 59(e) suspended the finality of the order of October 18, 1962 until January 14, 1963, the date when the order denying the motion was entered. It follows that the appeal filed on February 11, 1963 was within the time limit provided by Rule 73(a).

We turn next to a consideration of the present appeal on the merits. Section 258a, Title 40 U.S.C.A., provides the United States with an optional step for condemnation proceedings as follows. At any time before judgment on the issue of valuation the United States may file a "Declaration of Taking" and deposit in court the estimated just compensation for the premises to be condemned. On compliance with these two steps, title and immediate right to possession vest in the United States. The United States is not chargeable with interest on that part of the property taken which is covered by the deposit.[9] The statute further provides: "Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding."[10] The section concludes with the sentence which is the focal point of the present controversy: "The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

■ The statute therefore confers broad discretion on a United States district court in the situation at bar. We need not define the exact bounds of this discretion. It is sufficient to state here that the reviewing power of this court is sharply limited. The order in question must be permitted to stand unless there has been an error of law or the perpetration of injustice. Was the order of October 18th "just and equitable" under the circumstances within the meaning of Section 258a, Title 40 U.S.C.A.?

■ Three Hundred contends that the order of October 18th allowing interest on the mortgage debt to the date of payment was not just and equitable. In particular it asserts first that the court below abused its discretion in charging interest on the mortgage after January 26, 1962, the date Three Hundred surrendered possession of the condemned premises to the United States. The question is one, of course, to be decided by federal law. See United States v. Certain Lands in Borough of Brooklyn, supra. But we conceive that the federal law does not differ in any important respect from the legal principles which would be applicable in any court of equity. Three Hundred's contention cannot be sustained. A mortgage on realty is usually nothing more than collateral security for a primary obligation, a bond or a note, which a landowner is required to pay regardless of his possession or lack of possession, or indeed lack of ownership, of the mortgaged premises. See United States v. Eddings, 50 F.Supp. 926 (E.D.Wash.1943). We assume that such an obligation was given in the case at bar for Three Hundred has not offered any evidence or contention to the contrary. While a mortgagor may be obliged to give up possession of the land pursuant to a condemnation proceeding, this is wholly irrelevant in respect to the mortgage obligation itself. Moreover, the losing of possession of the land does not work an inequity on the landowner. If the United States, as here, has deposited in court the estimated just com-

---

9. See note 1, supra.

10. The discretion of the court to withhold distribution in whole or in part is to be exercised sparingly inasmuch as one of the purposes of the statute is to provide for prompt distribution. See United States v. Certain Land in City of St. Louis, Mo., 41 F.Supp. 809 (E.D.Mo. 1941), aff'd sub nom., O'Donnell v. United States, 131 F.2d 882 (8 Cir., 1942). Distribution is withheld to protect other interested parties.

pensation for the premises pursuant to Section 258a, the landowner is entitled to petition for the withdrawal of the sum due him at any time. See United States v. Miller, 317 U.S. 369, 381, 63 S.Ct. 276, 87 L.Ed. 336 (1943). If the United States has elected not to deposit the estimated compensation, the landowner is entitled to interest on the value of the property from the date of the taking. See United States v. Dow, 357 U.S. 17, 22, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958). Three Hundred was free to petition the court for the withdrawal of the money due it at the time it was relieved of possession of the land. It failed to do so

Three Hundred's second contention presents a more troublesome problem. It argues that the Trustees' application on March 9, 1962 for the balance of the money due on the mortgage stopped the running of interest against Three Hundred and the court abused its discretion in not so ruling. To put this contention in its strongest terms, it can be argued that the Trustee's action in applying to court for payment of the mortgage debt constituted an election to declare the whole debt due and to proceed against the collateral. From this premise, it can be reasoned that it is unfair to charge a mortgagor with interest on a fund over which he has no immediate control. One difficulty with this position is that it is too metaphysical. The mortgagee simply has a claim against a specific fund instead of a claim against a particular piece of real estate. The argument would be more effective if it could be said that at a given time the mortgagee became the owner of the fund rather than a claimant against the fund. But he cannot acquire the advantages of ownership until the court has made an order awarding him the fund. Until that time his control or his possibility of control of the fund is not substantially greater than or less than was his control of the land.

Either the mortgagor or the mortgagee can petition the court for withdrawal of the amount of the debt. The real question is who should bear the loss in the period of time between the date of the application, whether by the mortgagor or mortgagee, and the time of payment. This period is usually short. In the instant case it was unusually long, and this constitutes the real source of the difficulty. The reason for the delay is not immediately apparent from the record. But Three Hundred does not assert that the delay or delays were caused by the Trustees. If the position asserted by Three Hundred were adopted, the Trustees would bear the loss if they applied for distribution, and Three Hundred would bear the loss if it made the application. This not only would create a blatantly artificial distinction but also would tend to defeat one of the purposes of the statute which is to encourage prompt distribution. See United States v. Miller, supra. Finally, we cannot ignore the statutory mandate of Section 258a. This allows the United States courts broad discretion in condemnation cases. In view of these considerations we are unwilling to hold that the ruling of the court below on this point was an error of law. It follows that the court below was not guilty of injustice in continuing to charge Three Hundred with interest after the time of the Trustees' application for payment. As the events spell out, the equities seem to balance about evenly

As to whether or not the court below erred in denying Three Hundred's motion based on Rule 59(e) to alter or amend the order of October 18, 1962, our review is limited, as previously indicated,[11] to a consideration of whether or not it was error to charge Three Hundred with interest after March 26, 1962, in view of an asserted delay in payment caused by the United States. Even if it be assumed that the United States was responsible for the delay, Three Hundred does not set forth, nor can we conceive of any reasons in law or equity why the Trustees should bear the loss. It follows, therefore, that the denial of Three

---

11. See notes 7 and 8, supra, and accompanying text.

Hundred's Rule 59(e) motion in this respect did not constitute an abuse of discretion.

The orders of October 18, 1962 and January 14, 1963 will be affirmed.