## UNITED STATES *v.* DOW.

No. 102.   Argued March 5, 1958.—Decided June 9, 1958.

*Assistant Attorney General Morton* argued the cause for the United States. With him on the brief were *Solicitor General Rankin* and *Roger P. Marquis.*

*L. Keith Simmer* argued the cause for respondent. With him on the brief were *John C. White* and *Milton K. Eckert.*

Mr. Justice Harlan delivered the opinion of the Court.

The issue in this case arises out of a condemnation proceeding in which the United States acquired an easement pursuant to its power of eminent domain. The principal question presented is whether the claim to "just compensation" vested in the owners of the land at the time the United States entered into possession of the easement pursuant to court order in 1943 or whether such claim vested in the respondent, Dow, who acquired the land in 1945, at the time the United States filed a declaration of taking in 1946, under the Declaration of Taking Act of February 26, 1931, 46 Stat. 1421, 40 U. S. C. §§ 258a–258e.

In March 1943 the United States instituted a condemnation proceeding in the District Court for the Southern District of Texas to acquire a right-of-way for a pipe line over certain lands in Harris County, Texas, owned by the estate and heirs of John F. Garrett and James Bute. Among the lands condemned was Parcel 1, a narrow strip of some 2.7 acres out of a 617-acre tract, the property involved in the present suit. The Government proceeded under various statutes, including the Act of August 1, 1888, 25 Stat. 357, 40 U. S. C. § 257, and Title II of the Second War Powers Act of

March 27, 1942, 56 Stat. 176, 177. As requested in the petition, the District Court ordered the United States into the "immediate possession" of this strip. Within the next ten days the United States entered into physical possession and began laying the pipe line through the tract. The line was completed in 1943 and has been in continuous use since that time.

In November 1945 the 617-acre tract was conveyed to Dow by a general warranty deed which specifically excepted the pipe-line right-of-way as being subject to the condemnation proceedings. In May 1946 the Government filed a declaration of taking, under the Declaration of Taking Act, covering this pipe-line strip. Estimated compensation was deposited in court and judgment on the declaration of taking was entered. A few months later the Government amended its petition to name additional parties, including Dow, who were alleged to be asserting an interest in the land. The question of compensation was referred to commissioners under the Texas practice, which at that time was applicable to federal condemnation proceedings. See *United States* v. *Miller,* 317 U. S. 369, 379–380. After a hearing, at which Dow appeared, the commissioners, in 1948, awarded $4,450 for imposition of the pipe-line easement.

After a lengthy unexplained delay in the proceedings, the Government in May 1955 filed a motion for summary judgment against Dow. In March 1956 the District Court granted this motion and dismissed Dow as a party. The District Court found as a fact that Dow's grantors had intended to convey to him "all their right, title and interest in the said Parcel No. 1 or in the award to be made for the same." It then went on to rule that under the Assignment of Claims Act, 31 U. S. C. § 203, this was a prohibited assignment of a claim against the United States, and that the deed was therefore ineffective to convey to Dow the compensation award. The Court

of Appeals reversed, holding that no assignment was involved because no claim to compensation against the United States "arose and vested" until the filing of the declaration of taking in 1946, and that, because Dow by that time had become owner of the land, he was entitled to the award. 238 F. 2d 898. Because the question presented bears importantly on rights resulting from federal condemnation proceedings, we granted the Government's petition for certiorari. 353 U. S. 972.

It is well established, as the Court of Appeals recognized, that the Assignment of Claims Act prohibits the voluntary assignment of a compensation claim against the Government for the taking of property. *United States* v. *Shannon,* 342 U. S. 288. In view of the express finding of the District Court that Dow's grantors intended to convey to him their right to the condemnation award, we think that the transfer of the claim in this case must be considered to have been such a voluntary assignment, rather than, as Dow argues, an assignment taking effect by operation of law, and thus not within the Act's prohibition. Cf. *United States* v. *Aetna Casualty & Surety Co.,* 338 U. S. 366, 373–376; see *23 Tracts of Land* v. *United States,* 177 F. 2d 967, 970. We would not be justified in relaxing the rigor of the Act, especially in view of the fact that under its very terms the way was left open for the parties to accomplish a transfer of the award by valid means.* Accordingly, Dow can prevail only if the "taking" occurred while he was the owner. For it is undisputed that "[since] compensation is due at the time of taking, the owner at that time, not the owner at an

---

*The Assignment of Claims Act provides that assignments of claims which it would otherwise nullify are nevertheless valid if "they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. . . ."

earlier or later date, receives the payment." *Danforth* v. *United States*, 308 U. S. 271, 284; cf. *United States* v. *Dickinson*, 331 U. S. 745. We hold, contrary to the Court of Appeals, that the "taking" did not occur in 1946 when the Government filed its declaration of taking, but rather when the United States entered into possession of the land in 1943. It follows that the landowners in 1943 were entitled to receive the compensation award and that Dow is not entitled to recover in this action.

Broadly speaking, the United States may take property pursuant to its power of eminent domain in one of two ways: it can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings under various Acts of Congress providing authority for such takings. Under the first method—physical seizure—no condemnation proceedings are instituted, and the property owner is provided a remedy under the Tucker Act, 28 U. S. C. §§ 1346 (a)(2) and 1491, to recover just compensation. See *Hurley* v. *Kincaid*, 285 U. S. 95, 104. Under the second procedure the Government may either employ statutes which require it to pay over the judicially determined compensation before it can enter upon the land, Act of August 1, 1888, 25 Stat. 357, 40 U. S. C. § 257; Act of August 18, 1890, 26 Stat. 316, 50 U. S. C. § 171, or proceed under other statutes which enable it to take immediate possession upon order of court before the amount of just compensation has been ascertained. Act of July 18, 1918, 40 Stat. 904, 911, 33 U. S. C. § 594; Title II of the Second War Powers Act of March 27, 1942, 56 Stat. 176, 177 (employed by the Government in the present case).

Although in both classes of "taking" cases—condemnation and physical seizure—title to the property passes to the Government only when the owner receives compensation, see *Albert Hanson Lumber Co.* v. *United States*, 261 U. S. 581, 587, or when the compensation is deposited

into court pursuant to the Taking Act, see *infra,* the passage of title does not necessarily determine the date of "taking." The usual rule is that if the United States has entered into possession of the property prior to the acquisition of title, it is the former event which constitutes the act of taking. It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues. See *United States* v. *Lynah,* 188 U. S. 445, 470–471; *United States* v. *Rogers,* 255 U. S. 163; *Seaboard Air Line R. Co.* v. *United States,* 261 U. S. 299. The owner at the time the Government takes possession "rather than the owner at an earlier or later date, is the one who has the claim and is to receive payment." *23 Tracts of Land* v. *United States, supra,* at 970.

Had the Government not subsequently filed a declaration of taking in this case, there is no reason to believe that these ordinary rules would not have been applicable; the owners of the parcel when the Government entered into possession in 1943 would then have been entitled to compensation. No suggestion to the contrary has been made by Dow. Instead, Dow contends that although there was an entry into possession in 1943 which was an appropriation of the property sufficient to amount to a "taking," the subsequent filing of a declaration of taking vitiated the effect of the earlier entry, and rendered the filing date the time of the taking. We think that this contention is founded on a mistaken view of the Declaration of Taking Act and must be rejected.

Section 1 of the Declaration of Taking Act provides: "Upon the filing said declaration of taking [prior to judgment in a condemnation proceeding] and of the deposit in the court . . . of the estimated compensation . . . title . . . shall vest in the United States . . . and said lands shall be deemed to be condemned and taken for the

use of the United States, and the right to just compensation . . . shall vest in the persons entitled thereto . . . ." Although it has been recognized that the "exact effect of these provisions is not entirely clear," *Catlin* v. *United States,* 324 U. S. 229, 240, past cases in this Court have established certain unchallenged principles pertinent to the present controversy. The Taking Act does not bestow independent authority to condemn lands for public use. On the contrary, it provides a proceeding "ancillary or incidental to suits brought under other statutes," *Catlin* v. *United States, supra,* at 240. Such a proceeding can be instituted either at the commencement of the condemnation suit under the "other statutes" or, as in this case, after such a suit has been commenced and either before or after the Government has taken possession. In both situations the Taking Act enables the United States to acquire title simply by depositing funds "for or on account" of the just compensation to be awarded the owners, rather than by making payment pursuant to a court order. In those cases where the Government has not yet entered into possession, the filing of the declaration enables it to enter immediately and relieves it of the burden of interest from the time of filing to the date of judgment in the eminent domain proceedings. See *United States* v. *Miller, supra,* at 380–381.

The scheme of the Taking Act makes it plain that when the Government files a declaration before it has entered into possession of the property the filing constitutes the "taking." But neither the language nor the history of the Act provides a reliable indication as to the intention of Congress in cases, such as the one before us, where a declaration is filed *after* the Government has taken possession. Nevertheless, a number of considerations have led us to the view that in such cases the date of "taking" is the date on which the Government entered and appropriated the property to public use.

In the first place, to adopt the solution urged by Dow would be to undermine policies determining the other incidents of the Government's obligation to provide just compensation. As already noted, in cases where there has been an entry into possession before the filing of a declaration of taking, such entry has been considered the time of "taking" for purposes of valuing the property and fixing the date on which the Government's obligation to pay interest begins to run. To rule that the date of "taking" is the time of filing would confront us with a Hobson's choice. On the one hand, it would certainly be bizarre to hold that there were two different "takings" of the same property, with some incidents of the taking determined as of one date and some as of the other. On the other hand, to rule that for all purposes the time of taking is the time of filing would open the door to anomalous results. For example, if the value of the property changed between the time the Government took possession and the time of filing, payment as of the latter date would not be an accurate reflection of the value of what the property owner gave up and the Government acquired. In the graphic language of Chief Justice Shaw: "If a pie-powder court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand, whilst they apply the axe with the other." *Parks* v. *Boston,* 15 Pick. (Mass.) 198, 208. See also *Anderson* v. *United States,* 179 F. 2d 281. Similarly, because interest for delay in payment would not begin to accrue until payment of compensation is due, the Government would be absolved of interest until it chose to file a declaration of taking, even though it had already been in possession, to the exclusion of the property owner, for some time. Cf. *Seaboard Air Line R. Co.* v. *United States, supra.*

There is another reason why we cannot regard the time of filing as the time of the "taking" in cases where the Government has already entered into possession. Because of the uncertainty when, if ever, a declaration would be filed after the Government's entry, manipulations might be encouraged which could operate to the disadvantage of either the landowner or the United States. The Government tells us that the declaration of taking procedure may be invoked "solely in the discretion of the administrative officer." It would thus lie within the power of such an officer to reduce the "just" compensation due the property owner by staying his hand until a market situation favorable to the Government had developed. Conversely, landowners might be in a position to increase unduly the Government's liability. For instance, if a single tract of land were worth more than the sum of its component parcels, cf. *United States* v. *Runner,* 174 F. 2d 651, owners of adjacent condemned properties could consolidate their holdings after the Government's entry solely for the purpose of obtaining a larger award.

We cannot attribute to Congress the intention to promulgate a rule which would open the door to such obvious incongruities and undesirable possibilities.

We are not persuaded by any of the countervailing considerations put forward by Dow. It is claimed that much needed certainty would ensue in condemnation matters were the Court to hold that the Government's filing under the Taking Act invariably established the date of the "taking" of this property. But certainty is not lacking under the rule advocated by the Government, which fixes the "taking" at the time of the entry into physical possession—a fact readily ascertainable whether or not the Government makes use of condemnation proceedings, and whether or not it ever files a declaration of taking.

It is also argued that a property owner might be prejudiced under the Government's view because the project could be abandoned and the condemnation proceedings discontinued before title passed to the Government. But the possibility of such an abandonment exists whenever the Government enters into possession of property without filing a declaration of taking and without otherwise providing compensation for acquisition of the title. In any event, such an abandonment does not prejudice the property owner. It merely results in an alteration in the property interest taken—from full ownership to one of temporary use and occupation. *O'Connor* v. *United States,* 155 F. 2d 425; *Moody* v. *Wickard,* 78 U. S. App. D. C. 80, 136 F. 2d 801; cf. *Cherokee Nation* v. *Southern Kansas R. Co.,* 135 U. S. 641, 660. In such cases compensation would be measured by the principles normally governing the taking of a right to use property temporarily. See *Kimball Laundry Co.* v. *United States,* 338 U. S. 1; *United States* v. *Petty Motor Co.,* 327 U. S. 372; *United States* v. *General Motors Corp.,* 323 U. S. 373.

Nor can we accept the suggestion that in cases like the present one the total compensation should be divided between the first and second owners of the property, the former taking that portion of the award attributable to the Government's use of the property until the passage of title, and the latter receiving the balance. Cf. *United States* v. *40,379 Square Feet of Land,* 58 F. Supp. 246. To require the Government to deal with more than one party, particularly when division of the condemnation award would entail a complex apportionment, might severely impede the orderly progress of condemnation proceedings and would conflict with the policies underlying the Anti-Assignment Act. See *Hobbs* v. *McLean,* 117 U. S. 567, 576; *United States* v. *Aetna Casualty & Surety Co., supra.*

Dow relies on *Danforth* v. *United States, supra,* and *United States* v. *Dickinson, supra,* but neither case is in point on the issue before us. In *Danforth* the Court rejected the landowner's claim for interest on the ground, *inter alia,* that the construction of a set-back levee near his land did not amount to a "taking" because the Government by such action had not yet appropriated the property to its use. The expressly limited holding in *Dickinson* was that the statute of limitations did not bar an action under the Tucker Act for a taking by flooding when it was uncertain at what stage in the flooding operation the land had become appropriated to public use. In the present case there is no dispute over the fact that the United States appropriated Parcel 1 on the date that it entered into physical possession under order of the District Court.

Finally, we see no merit in the suggestion that it is inequitable to deny Dow recovery in this action. Dow took his deed with full notice of the condemnation proceeding brought by the United States. There were readily available contractual means by which he could have protected himself *vis-à-vis* his grantors against the contingency that his claim against the United States would be subsequently invalidated by the Anti-Assignment Act. And whatever may be the equities between the former owners and Dow, or between the Government and the former owners, whose claim to compensation Dow asserts may be barred by the statute of limitations, such equities cannot serve to prevent the application of the correct rule of law as between the Government and Dow in this case. Cf. *McKenzie* v. *Irving Trust Co.,* 323 U. S. 365, 369.

*Reversed.*