**Mary Louise K. BRYAN et al., Plaintiffs,**
**v.**
**WEST SIDE CALHOUN COUNTY NAV-**
**IGATION DISTRICT et al.,**
**Defendants.**

**Civ. A. No. 442.**

United States District Court
S. D. Texas,
Victoria Division.

Dec. 18, 1961.

Austin Y. Bryan, Jr., Port Lavaca, Tex., for plaintiffs.

Arthur L. Moller, Asst. U. S. Atty., Houston, Tex., Conde N. Anderson, Stofer, Houchins, Anderson & Smith, Victoria, Tex., William R. Eckhardt, III, Vinson, Elkins, Weems & Searls, Houston, Tex., for defendants.

FISHER, District Judge.

On Defendants' motion to dismiss.

The individual complainants, Mary Louise K. Bryan and her husband, Austin Y. Bryan, Jr., Howard Kenyon, Jr., all residents of Calhoun County, Texas, Wilhelmina Skolnick, joined by her husband, Benjamin Skolnick, residents of the State of New Jersey, Mrs. Louise K. Wagner, a widow and resident of the State of New Mexico, as owners of an undivided four fifths of the bed of Green Lake, and the San Jacinto Water and Irrigation Company, a Texas corporation with its home office in Houston, Harris County, Texas, seek injunctive, and in the alternative, declaratory relief against the United States, the West Side Calhoun County Navigation District, the Victoria County Navigation District, McGinnes Bros., Inc., and various officers of the Corps of Engineers.

In substance, the complaint charges that the Defendants, without Congressional authority, are placing a sea-level barge channel around the northern perimeter of Green Lake, thereby severing the lake's sources of water supply. More particularly, the plaintiffs allege that the Rivers and Harbors Act of 1945 cannot be enlarged to include the location of the channel in its present alignment and those responsible for the present location are acting outside the scope of their statutory authority and should be enjoined. Plaintiffs also contend that under Section 666, Title 43 U.S.C.A., the United States has consented to be joined as a party.

The drainage from Green Lake's surrounding watershed on the North and East and the flow of Jones Bayou into Green Lake have been diverted and the plaintiffs have been deprived of the value and use of their water rights; however, as of this date, defendants have not filed condemnation proceedings.

In view of the decision that I make regarding the motion to dismiss, a discussion of only two primary issues is necessary. First, the charge that the Corps of Engineers has exceeded their authority in locating the channel on the northern edge of Green Lake, and second, that the United States has submitted to suit under Section 666, Title 43 U.S.C.A.

I find that the Corps of Engineers is acting within the scope of their authority and from that finding, it follows that the suit is one against the United States. I further find that the United States has not consented to be sued, nor has it submitted to suit under 43 U.S.C.A. § 666. The action is against the United States unless the action of which complaint is made is in excess of the officers' statutory authority or unless it is taken under the authority of a statute which is unconstitutional. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, and Hudspeth County Conservation and Reclamation Dist. No. 1 et al. v. Robbins et al., 213 F.2d 425 (5th Cir.).

We find the statutory origin of authority for the channel in House Document No. 247, 76th Congress, 1st Session, which reads in the pertinent part as follows:

"The channel for most of its length would consist of a canal located inshore from and generally paralleling the bay and the river on the east to a point just below Victoria where the channel would enter the river and follow the latter to the head of the improvement."

Generally, the purpose of the Corps of Engineers, an administrative body, in a project such as this is to work out the details, plans and specifications, and to supervise the construction within the scope of their authority. This language from Ryan v. Chicago, B. & Q. R. Co., 59

F.2d 137 (7th Cir.), a case relied on by complainants, illustrates the permissive functions of the Corps.

"Detailed plans and specifications for the construction of enormous works of this kind are never prepared and approved in advance by Congress, but, after authorization of the work by Congress, the plans are prepared by officers of the Board of Engineers of the United States Army under the supervision of the Secretary of War, to whom is given a very wide discretion over the construction, maintenance, and alteration of dams, bridges, and dikes in the navigable waters of the United States.  *  *  *

"It is not contended that the Secretary of War or those acting under him can override the will of Congress.  His discretion lies in working out the details which he deems necessary to carry out the project authorized by Congress; but if Congress so desires, it may limit the project as to details, and, if it does so, the Secretary of War has no authority to ignore or change those details."

House Document No. 247 does not specifically locate the channel basin but places it " *  *  *  generally paralleling the bay and the river on the east  *  *." Nowhere does the authorizing document place a limitation on the location of the channel except as noted above.  It is clear that, under this general authorization, Congress has elected to place the selection of a route in the hands of the Secretary of the Army and the Chief of Engineers.  They have not exceeded the statutory grant of authority by locating the channel around the northern edge of Green Lake.  Since the officers are not exceeding their authority, the suit becomes one against the United States. Larson v. Domestic & Foreign Commerce Corp., supra.

Plaintiffs insist that the United States has given consent to be sued by virtue of Section 666, Title 43 U.S.C.A.  Section 666 in the applicable portion is herein quoted:

(a) "Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State Law, by purchase, by exchange or otherwise, and the United States is a necessary party to such suit."

In Miller v. Jennings, 243 F.2d 157 (5th Cir.), a case involving claims to water on the upper Rio Grande, the court in its discussion of 43 U.S.C.A. § 666, had this to say concerning the parties to such an action:

"There can be an adjudication of rights with respect to the upper Rio Grande only in a proceeding where all persons who have rights are before the tribunal.  The Ninth Circuit Court of Appeals has most succinctly stated the doctrine in this manner:

" 'The only proper method of adjudicating the rights on a stream, whether riparian or appropriative or mixed, is to have all owners of lands in the watershed and all appropriators who use water from the streams involved in another watershed in court at the same time.' People of the State of California v. United States, 9 Cir., 1956, 235 F.2d 647, 663."

In the recent Ninth Circuit case of State of California et al. v. Rank et al., 293 F.2d 340, the court set forth with certainty the type of suit by which the United States could be joined under Sec. 666.  In the Court's discussion of Sec. 666, they said:

"There can be little doubt as to the type of suit Congress had in mind.  It was not a private dispute between certain water users as to their conflicting rights to the

use of waters of a stream system; rather, it was the quasi-public proceeding which in the law of western waters is known as a 'general adjudication' of a stream system: one in which the rights of all claimants on a stream system, as between themselves, are ascertained and officially stated."

The Court in Rank, supra, gave two reasons for their case not measuring up to the requirements of Section 666. They were (1) all claimants had not been joined and (2) the relief prayed for nor the decree included the establishment of the rights of claimants as between themselves. In the present case, neither the riparian owners of the waters of Jones Bayou nor the entire ownership of Green Lake is represented in this action. Also, neither the relief prayed for nor the decree includes the establishment of the rights of claimants are between themselves. Thus, for the very same reasons as in Rank, the present case fails to meet the standards of joinder of the United States under Section 666, and the United States is accordingly dismissed.

The plaintiffs urge Rank as a grounds for enjoining the Corps of Engineers even if the United States is dismissed from the suit. The distinguishing element in Rank and the present case is that here the water rights allegedly belonging to plaintiffs have been effectively and actually taken while in Rank, the injunction was issued on the basis that since the United States had not taken the vested water rights of the plaintiffs, either by condemnation or physical seizure, the Bureau of Reclamation officials could be enjoined from interfering with those rights. It is clear that a physical taking by the United States constitutes a taking the same as the institution of condemnation proceedings. United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L. Ed.2d 1109.

Since whatever property and rights these plaintiffs own have already been taken by way of physical seizure by the Government, then the plaintiffs are remitted to the Tucker Act, 28 U.S.C. §§ 1346, 1491, for any warranted relief as against the Defendant United States, but under the agreement and indemnification clause made by the United States with the local interests, to wit, Defendants West Side Calhoun Navigation District and Victoria County Navigation District, it appears that plaintiffs may bring a cause of action against the local interests for such damages as they have suffered as the natural result of the construction.

The defendants have had notice of plaintiffs' claim since November, 1959. However, they did not acknowledge its existence by instituting condemnation proceedings. An individual should not be burdened by the inconveniences of a Tucker Act claim except under the most unusual circumstances. This Court feels that every consideration should be given to the citizens from whom rights and property are acquired.

The motion to dismiss is granted.