UTILITIES AND INDUSTRIES CORP., Respondent-Appellant, *v.* STATE OF NEW YORK, Appellant-Respondent.   (Claim No. 39026.)

Third Department, May 31, 1967.

*Elias M. Schwarzbart* for respondent-appellant.

*Louis J. Lefkowitz, Attorney-General* (*Julius L. Sackman* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

GABRIELLI, J. This is an appeal by the State from a judgment of the Court of Claims awarding claimant $153,793.44, including interest, for direct and consequential damages resulting from an appropriation of land; and cross appeal by the claimant on the ground of inadequacy.

The taking was occasioned by the construction of the Glen Cove Arterial Highway which severed the 5.625 acres owned by claimant and consisted of the partial taking of its water supply plant servicing the City of Glen Cove. The appropriation left claimant with 2.889 acres west of this controlled access highway, this land being cut off from any access on any side; and with 0.175 acre east of the arterial. Upon this appeal, we are basically concerned with the question of consequential damages to the westerly 2.889 acres as they relate to the total damages sustained by claimant, for there is no quarrel with the findings made by the court as to direct damages.

The westerly remainder was completely landlocked by the original appropriation map (No. 7). By an amended map (No. 7R3), the Superintendent of Public Works allowed limited access from this parcel to the arterial "only so long as they [owners and their successors] shall use the adjoining property for public water supply purposes, but only to an extent which will not interfere with the use of said property for highway purposes * * * *Such rights of access shall terminate and be permanently extinguished providing said rights are subjected to any other uses than access for public water supply purposes on remaining property of the owner located*" to the west of the arterial. (Emphasis supplied.)

Although there is no dispute as to the amount of direct damages, the findings do not permit the making of new findings regarding consequential damages because neither their basis nor the amounts for various components of damages therefor can be determined from the record, and upon this ground alone the case must be remitted (*Conklin* v. *State of New York*, 22 A D 2d 481).

The court noted that "there was substantial consequential damage" created by the restriction placed upon claimant's use of the entry ramp onto the arterial. Claimant's appraiser testified to consequential damages because of this condition while the State offered no evidence as to consequential damages occasioned by this restriction on the westerly remainder. The State's

position that there could be no consequential damages for the restriction is well founded, for the Superintendent was without power to restrict access to the arterial "only so long as they [owners and their successors] shall use the adjoining property for public water supply purposes". The imposition of such a restriction has no support in any statutory or other authority and cannot be created by or read into subdivision 2 of section 3 of the Highway Law which provides that no abutting owner shall have access to a controlled access highway "excepting as such access may be *reserved* pursuant to the description and map". (Emphasis supplied.) There is a vast difference between such a reservation and the unreasonable restriction actually imposed here, for the restriction has no reasonable relationship to the safety of or benefit to the traveling public and is, therefore, a nullity (*Chili Plaza* v. *State of New York,* 25 A D 2d 491; *Idylbrook Farms* v. *State of New York,* 22 A D 2d 761). Should the Superintendent decide to allow a *reservation* of access (Highway Law, § 3, subd. 2), he can do so for reasons of safety, but he cannot so condition the reservation as actually to restrict the use to which the land itself can be put (*Schulman* v. *People,* 10 N Y 2d 249).

While the restriction itself is null and void, that part of the reservation which created an easement of access "only to an extent which will not interfere with the use of said property for highway purposes" was statutorily authorized; and the State could, in the future, block the access upon this condition which could *then* give rise to substantial consequential damages. In such a situation, claimant is not presently damaged, but if action terminating the easement were taken, it would at that time be regarded as a *de facto* taking (*Wolfe* v. *State of New York,* 23 A D 2d 136; *Clark* v. *State of New York,* 20 A D 2d 182, affd. 15 N Y 2d 990; *Jafco Realty Corp.* v. *State of New York,* 18 A D 2d 74, affd. 14 N Y 2d 556).

An additional error to be assigned is the allowance of interest from the date of the State's entry upon the premises, to the date when the claim was filed. The original appropriation map was filed in the Secretary of State's office on July 18, 1958 and the State entered the premises on March 4, 1959. The final revised map was filed on October 11, 1960 and the claim was filed on March 31, 1961.

The trial court's holding is contrary to the provisions of subdivision 1 of section 19 of the Court of Claims Act which provides that " If a claim which bears interest, is not filed until more than six months after the accrual of said claim, no interest shall be allowed between the expiration of six months from the

time of such accrual and the time of the filing of such claim ''; and, of course, the interest begins to run again when the claim is filed. This is and should be the rule particularly where, as here, there has been no showing of any deprivation of use or dominion on the part of the owner. In point is *United States* v. *Dow* (357 U. S. 17) where it was held that regardless of the time of formal vesting, the '' taking '' date is the date of actual entry. (And see, *Kahn* v. *State of New York,* 27 A D 2d 476 [decided herewith].)

Upon the trial of *Cacciatore* v. *State of New York* (5 Misc 2d 841) the court, as here, found that the appropriation occurred '' when the state actually entered upon the claimants' lands '', made an award and computed interest from that date to the entry of judgment. The State moved to have the decision amended to conform with the requirements of subdivision 1 of section 19 of the Court of Claims Act. In denying the motion, the Court of Claims found it had no authority to do so because the application therefor was not timely made. Upon appeal, the Fourth Department (4 A D 2d 928), citing the mandate in Court of Claims Act (§ 19, subd. 1), modified the judgment by ordering that interest terminate six months from the accrual of the claim and start again when the claim is filed; and we are constrained to so hold in the case at bar.

There may well be consequential damages to which claimant may be entitled because the westerly portion is below grade and further because this portion is restricted with respect to expansion, but these items were not specified by the court. It clearly appears that the Court of Claims based its finding of consequential damages upon a restriction which is a nullity and upon a reservation for which there are no present damages.

The judgment should be reversed, on the law and the facts, and the matter remitted to determine the correct amount of consequential damages and appropriate interest on any award or for further proceedings not inconsistent herewith.

GIBSON, P. J., REYNOLDS, AULISI and STALEY, JR., JJ., concur.

Judgment reversed, on the law and the facts, and matter remitted to determine the correct amount of consequential damages and appropriate interest on any award or for further proceedings not inconsistent herewith, without costs.