**UNITED STATES of America,
Plaintiff,**

**v.**

**35.163 ACRES OF LAND, MORE OR LESS, Situate IN COOK COUNTY, STATE OF ILLINOIS, and the Metropolitan Sanitary District of Greater Chicago, a Municipal Corporation, et al., Defendants.**

**No. 69 C 1366.**

United States District Court,
N. D. Illinois, E. D.

Oct. 14, 1971.

William J. Bauer, U. S. Atty., Michael Berman, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Allen S. Lavin and Vincent P. Flood, Chicago, Ill., for Metropolitan Sanitary Dist. of Greater Chicago.

William J. Scott, Atty. Gen., State of Illinois, and John F. Galvin, Asst. Atty. Gen., State of Illinois, Chicago, Ill., for State of Illinois.

Edward V. Hanrahan, State's Atty. of Cook County, and James A. Rooney, Asst. State's Atty., Chicago, Ill., for County of Cook, a body politic and corporate; Edmund J. Kucharski, County Treasurer of Cook County; Edward J. Barrett, County Clerk of Cook County; and Edward V. Hanrahan, State's Atty. of Cook County.

## MEMORANDUM
### and
### JUDGMENT ORDER

PERRY, District Judge.

This is an Eminent Domain proceeding brought by the United States of America. Suit was filed on June 30, 1969, under the provisions of Section 258a of Title 40, U.S.Code Annotated. The parcels of land in question are owned by The Metropolitan Sanitary District of Greater Chicago. Said land was appropriated by the United States of America, for:

1) relocation of railroad tracks and approaches to new bridges over the Cal-Sag Navigation channel; and

2) relocation of highway bridges and approaches thereto over the Cal-Sag Navigation Project.

The Government deposited with the Registry of the Court, the sum of $146,-238.90, as and for just compensation of all parcels involved herein.

Subsequent to the filing of this action by the United States Government, The Metropolitan Sanitary District of Greater Chicago advised the Government that it would not accept compensation for the highway bridges because by its resolutions it had agreed to furnish such land free of cost. The Government then took the position that it should not compensate The Metropolitan Sanitary District of Greater Chicago for any of the parcels contained in this litigation contending that The Metropolitan Sanitary District of Greater Chicago, as local sponsor under House Document 677, was to provide "all land necessary for this project."

The Government delayed action on the merits of this cause because of alleged conferences with the Department of Justice in Washington. These delays effectively prevented The Metropolitan Sanitary District of Greater Chicago from taking the money deposited with the Court's Registry.

On August 11, 1971, The Metropolitan Sanitary District of Greater Chicago filed a Petition for Interest on the sums deposited with the Registry of this Court pertaining to those parcels of land taken for relocation of railroad tracks or approaches to railroad bridges contending:

1) That it was entitled to interest on each parcel taken for railroad bridge approaches or relocation of railroad tracks, from the date of actual possession by the Government to the date of the filing of this proceedings in Eminent Domain, and

2) That it was entitled to interest at the rate of 6% per annum from June 30, 1969, to the date of final disbursement because of the delay on the part of the United States Government.

On August 25, 1971, the Government filed its Motion for Summary Judgment contending that under House Document 677, The Metropolitan Sanitary District of Greater Chicago, as local sponsor, was obligated to furnish, free of cost, all land needed for this project with the single exception of such land needed for the waterway "as is now occupied by abutments or railroad tracks at approaches to railroad bridges."

On July 30, 1971, The Metropolitan Sanitary District of Greater Chicago, filed a Request for Admissions by the United States Government. On September 8, 1971, the Government replied. The Metropolitan Sanitary District of Greater Chicago listed 55 parcels of property in its Request for Admissions

concerning whether or not the United States had paid for these premises through condemnation proceedings or purchase. The Government's answer admitted that it had acquired and paid for 44 of the parcels listed but denies that it acquired 11 others either by purchase, condemnation or otherwise. Of the 11 parcels denied by the Government, eight were property of railroads and three were streets within a subdivision so no actual acquisition by purchase or condemnation was necessary.

Question No. 2 had to do with the dates of possession of the parcels in question by the United States Government. The Government admitted the date of possession as to tracts D–404, D–404–2 and A–106–2, but neither admits nor denies the date of the balance of the tracts stating that the Government records do not indicate the dates in question.

Question No. 3 concerned whether or not the Government had agreed to pay to The Metropolitan Sanitary District certain compensation. The Government admits this but states that such agreements were a mistake.

Question No. 4 concerns the genuineness of a letter setting forth the compensation concerning certain parcels, signed by Thomas P. Kelleher, U. S. Army Engineering Division, North Central Corps of Engineers, and admits the genuineness of this letter.

■ Since the Government's Motion for Summary Judgment questions whether or not The Metropolitan Sanitary District of Greater Chicago should be paid any money for its property, it is necessary to take up this question first.

The Metropolitan Sanitary District of Greater Chicago responded to the Government's Motion stating:

"House Document No. 677 became Law by virtue of Public Law No. 525 adopting the provisions thereof. Said House Document provides at page 46, Section 72, as follows:

"Bridge costs.—Bridge costs and their apportionment have been derived from appendix B of this report and supplemented estimates furnished by the consultants. *Assurances have been given that highway bridges will be altered by local interests. It is believed to be equitable to apportion the railroad bridge costs in general accordance with section 6 of the (Truman-Hobbs) act approved June 21, 1940.* On February 23, 1945, the district engineer and the railroad committee on Calumet Sag project bridges signed an informal agreement setting forth in more detail the manner in which the costs would be divided. (See exhibit A.)" [Emphasis supplied.]

"Said House Document further states as pages 52 and 53 thereof, as follows:

"(g) Rebuild or otherwise alter at *Federal expense* to the extent specified in paragraph 72 all obstructive railroad bridges across the channels whose improvement is proposed herein, including the bridge of the Illinois Central Railroad at mile 11.20 of the Little Calumet River, so as to provide suitable clearances; and that the Secretary of War be authorized to enter into contracts with the various railroads whereby each obstructive bridge will be (1) rebuilt either in its present location, or (2) in another location or else eliminated by rearrangement or joint use of *railroad facilities at a cost to the United States of not more than would be occasioned by rebuilding in the present location;* provided, that local interests shall remove, reconstruct, or alter all highway bridges across the waterways whose improvement is proposed herein, which, in the opinion of the Chief of Engineers, constitute an unreasonable obstruction to navigation; and provided further, that local interests shall furnish without cost to the United States all land and easements necessary for the execution of the project, including the necessary areas for the disposal of spoil for

new work construction, *with the exception of such land needed for the waterway as is now occupied by abutments or railroad tracks at the approaches to railroad bridges, rights-of-way over which lands shall be acquired by the United States as an incident to the alteration of the bridges;* and provided further, that the several sections of the proposed channel may be improved as separate units when considered advisable by the Chief of Engineers and when local interests have provided the cooperation indicated above for any unit." [Emphasis supplied.]

This Court finds that House Document No. 677 specifically provided for the construction and relocation of tracks and railroad bridges under Section 72 of that Document; that Section 72 provides that the relocation of the railroad bridges and approaches thereto would be done under the provisions of the Truman Hobbs Act. The Truman Hobbs Act provides for the Government to pay the railroads in accordance with the formula established in said Act.

The Court further finds that the Truman Hobbs Act, as originally passed on June 21, 1940, provided for the Government to assist in the relocation of railroad bridges as therein set forth, which is now Section 511 to and including 523 of Title 33, U.S.Code Annotated. The Truman Hobbs Act made no provision for Government assistance concerning highway bridges.

However, it should be noted that the Truman Hobbs Act was amended on July 16, 1952, and this amendment provided that the United States share in the cost of relocation of highway bridges in the same manner as it did with railroad bridges.

House Document No. 677 was amended by House Document No. 45 approved by Public Law 85–500 on June 3, 1958. This amendment eliminated the requirement set forth in Section 72 of House Document No. 677 that "local interests

will alter highway bridges at local expense." Despite this change, the Metropolitan Sanitary District of Greater Chicago has not requested payment for land taken for the relocation of highway bridges by the United States Government.

Judgment is entered in favor of The Metropolitan Sanitary District of Greater Chicago and against the United States of America, in the sum of $76,085.90, as to parcels:

| Tract No. | Compensation | |
|---|---|---|
| D–404 | $ 250.90 | |
| D–404–2 | 100.00 | |
| A–106–1 | 7,450.00 | |
| A–106–2 | 49,400.00 | |
| A–106–5 | 1.00 | Compensation Waived |
| A–106–E | 1.00 | " " " |
| B–201 | 4,560.00 | |
| B–222–1 | 10,700.00 | |
| B–222–2 | 850.00 | |
| B–222–3 | 2,775.00 | |
| B–222–E | 1.00 | Compensation Waived |
| T O T A L | $76,085.90 | |

It is further ordered that compensation is waived as to the balance of the parcels set forth in the Declaration of Taking.

Since the Government's Motion for Summary Judgment is denied and The Metropolitan Sanitary District's Motion for Summary Judgment is allowed, we now take up the question of interest.

From the pleadings and admissions filed herein, the Court finds that the Government went into possession of the following parcels on the dates set forth:

| Parcel No. | Date of Possession. |
|---|---|
| D–404 | 3/19/59 |
| D–404–2 | 3/19/59 |
| A–106–1 | 10/ 9/58 |
| A–106–2 | 10/ 9/58 |
| A–106–5 | 10/ 9/58 |
| A–106–E | 10/ 9/58 |
| B–201 | 6/16/60 |
| B–222–1 | 6/16/60 |
| B–222–2 | 6/16/60 |
| B–222–3 | 6/16/60 |
| B–222–E | 6/16/60 |

That the dates of actual taking of the premises in question are the dates of actual possession and not the date of the filing of this cause. This is supported by the case entitled United States v.

Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed. 2d 1109 (1958):

"We hold, contrary to the Court of Appeals, that the 'taking' did not occur in 1946 when the Government filed its declaration of taking, but rather when the United States entered into possession of the land in 1943."

The Court, in the same case, further stated:

"Broadly speaking, the United States may take property pursuant to its power of eminent domain in one of two ways: it can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings under various Acts of Congress providing authority for such takings."

The Court further stated, at page 22, 78 S.Ct. at page 1044:

"The usual rule is that if the United States has entered into possession of the property prior to the acquisition of title, it is the former event which constitutes the act of taking. It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues. See United States v. Lynah, 188 U.S. 445, 470–471, 23 S.Ct. 349, 357, 47 L.Ed. 539 [548, 549]; United States v. Rogers, 255 U.S. 163, 41 S.Ct. 281, 65 L.Ed. 566; Seaboard Air Line R. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664."

In the case entitled Bishop v. United States, 5 Cir., 288 F.2d 525, at page 527 (1961), which involved specifically the issue of whether or not interest is payable by the Government under the Declaration of Taking Act, 40 U.S.C.A. § 258a, for the period of time in which the withdrawal of the deposit was prevented by the Government, the Court of Appeals said:

"While, in this problem, we deal with a statute, the statute is one which has constitutional overtones, and it is to be read in this light. The Declaration of Taking Act 'does not bestow independent authority to condemn lands for public lands. On the contrary, it provides a proceeding "ancillary or incidental to suits brought under other statutes," Catlin v. United States, * * * (324 U.S. [229] at 240 [65 S.Ct. 631, at page 637, 89 L.Ed. 911]).' United States v. Dow, 1958, 357 U.S. 17, at page 23, 78 S.Ct. 1039, at page 1045, 2 L.Ed.2d 1109; In re United States, 5 Cir., 1958, 257 F.2d 844, 847. By the time of its enactment in 1931, the doctrine was unquestioned that interest was a part of just compensation not, as in a damage suit, a mere payment for delay. 'Where the United States condemns and takes possession of land before * * * paying compensation, the owner is not limited to the value of the property at the time of taking; he is entitled to such addition as will produce the full equivalent of that value, paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added.' This is so because the compensation must be 'the full and perfect equivalent of the property taken.' Seaboard Airline Railway Co. v. United States, 1923, 261 U.S. 299, 304, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664."

Therefore, since compensation concerning these parcels was fixed at or about the time the Government went into possession, The Metropolitan Sanitary District of Greater Chicago is entitled to interest at the rate of 6% per annum from the dates of possession to the filing of this cause on June 30, 1969, in the sum of $47,069.78.

As to interest from June 30, 1969, to September 30, 1971, the Court finds that the action of the Government prevented The Metropolitan Sanitary District of Greater Chicago from taking down the funds deposited with the Registry of the Court. Therefore, The Metropolitan Sanitary District of Greater Chicago is entitled to 6% interest for the period of time amounting to $10,271.61.

Judgment is entered in favor of The Metropolitan Sanitary District of Great-

er Chicago and against the United States of America in the further sums of $47,069.78 as and for interest from the date of possession of the premises in question to June 30, 1969, and in the sum of $10,271.61, as and for interest from June 30, 1969, to September 30, 1971.

It is further ordered:

That the Clerk pay to The Metropolitan Sanitary District of Greater Chicago, the following sums of money from the Registry of this Court:

|  |  |
|---|---|
|  | $76,085.90 |
|  | 47,069.78 |
|  | 10,271.61 |
| TOTAL | $133,427.29 |