## GOODWILL COMMUNITY CHAPEL v GENERAL MOTORS CORPORATION

Docket No. 130845. Submitted December 10, 1992, at Detroit. Decided
June 7, 1993, at 10:10 A.M. Leave to appeal sought.

The Goodwill Community Chapel brought an action in the Wayne
Circuit Court against General Motors Corporation, alleging
that the defendant had trespassed on its property by virtue of
acquiring title to the property through condemnation proceed-
ings by the City of Detroit that were void ab initio. The court,
John R. Kirwan, J., granted summary disposition for the defen-
dant, concluding that the quick-take provision of the Uniform
Condemnation Procedures Act, MCL 213.57; MSA 8.265(7),
automatically vested in the City of Detroit title to the property
in November 1980 when the city commenced its condemnation
action against the property and that the title did not revert to
the plaintiff once it was ultimately determined by the Court of
Appeals that the city's condemnation proceeding was jurisdic-
tionally defective. See *In re Acquisition of Land for the Central
Industrial Park Project,* 127 Mich App 255 (1983), and 177
Mich App 11 (1989). The city conveyed the property to the
defendant by warranty deed while the plaintiff's first appeal to
the Court of Appeals was pending. There is no dispute that the
city had the authority to acquire the property. The plaintiff
appealed.

The Court of Appeals *held:*

In light of the Legislature's intent that a condemning author-
ity quickly obtain title so that public projects can proceed
without the delays of normal civil litigation, MCL 213.57; MSA
8.265(7) must be construed as vesting title in the condemning
authority once a complaint for condemnation is filed. The
statute does not require the filing of a "proper complaint"
before title vests in the condemning authority. The filing of a
complaint for condemnation, regardless of whether the com-
plaint is later adjudged to be defective, vests title with the
condemning authority. Where, as in this action, the govern-

REFERENCES

Am Jur 2d, Eminent Domain § 131.
See ALR Index under Eminent Domain.

ment's authority to acquire the property is not at issue, MCL 213.57; MSA 8.265(7) vests indefeasible or absolute title in the government when the complaint is filed.

Affirmed.

EMINENT DOMAIN — VESTING OF TITLE — FILING OF COMPLAINT.

Where a government's authority to acquire property by condemnation is not at issue, indefeasible or absolute title to the property sought to be acquired is vested in the condemning authority when its complaint for condemnation is filed regardless of whether the complaint is later adjudged to be defective (MCL 213.57; MSA 8.265[7]).

*Ackerman & Ackerman, P.C.* (by *Alan T. Ackerman* and *Kenneth C. Harrison*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana* and *James R. Kohl*), for the defendant.

Before: CAVANAGH, P.J., and MACKENZIE and GRIFFIN, JJ.

MACKENZIE, J. Plaintiff appeals as of right from an order granting summary disposition in favor of defendant. We affirm.

On November 24, 1980, the City of Detroit commenced a condemnation action against plaintiff and other property owners as part of the so-called "Poletown" project. The city offered and plaintiff accepted a settlement regarding plaintiff's property. Plaintiff, however, subsequently sought to set aside the settlement as fraudulently induced by the city. The trial court summarily denied plaintiff's motion to set aside the settlement; this Court remanded for a full review of plaintiff's claims against the city. *In re Acquisition of Land for the Central Industrial Park Project,* 127 Mich App 255; 338 NW2d 204 (1983) (*Acquisition I*).

On remand, the trial court set aside the settlement and the case went to trial to decide the issue of just compensation. A jury awarded plaintiff

$95,000. Plaintiff moved to dismiss on the ground of lack of subject-matter jurisdiction, and also moved for a new trial on the ground of juror bias. The trial court denied the motion to dismiss, but granted a new trial. Following a second trial, the jury awarded plaintiff $118,025 as just compensation. Plaintiff again appealed. This Court held that the trial court lacked subject-matter jurisdiction with regard to the condemnation proceeding and hence should have dismissed the action. *In re Acquisition of Land for the Central Industrial Park Project,* 177 Mich App 11; 441 NW2d 27 (1989) (*Acquisition II*). The panel found that the city's tender of a good-faith offer to purchase plaintiff's property was mandatory to invoke the court's jurisdiction over condemnation proceedings, and read this Court's opinion in *Acquisition I* as concluding that the city did not make a good-faith offer to plaintiff. 177 Mich App 17. Accordingly, the case was remanded for dismissal without prejudice. The city refiled its condemnation action, and plaintiff has been compensated for the taking.

In the meantime, the city had conveyed the subject property to defendant by warranty deed on January 15, 1982, while plaintiff's first appeal in the condemnation case was pending. Defendant subsequently demolished the building on the property, and the property became part of defendant's Detroit/Hamtramck assembly plant.

After this Court ordered dismissal of the city's condemnation action in *Acquisition II,* plaintiff filed this suit against defendant alleging that defendant had trespassed on plaintiff's property. According to plaintiff, the city never obtained good title to the property and therefore could not pass good title to defendant. The trial court granted summary disposition in favor of defendant, concluding that the so-called "quick take" provision of

the Uniform Condemnation Procedures Act, MCL 213.57; MSA 8.265(7), automatically vested title to the property in the city when it commenced the condemnation action, and that title did not revert to plaintiff once it was ultimately determined that the city's condemnation proceeding was jurisdictionally defective.

In two related arguments on appeal, plaintiff contends that the trial court erred in ruling that title to the subject property automatically vested in the city pursuant to MCL 213.57; MSA 8.265(7) because, as determined by this Court in *Acquisition II,* the complaint in the condemnation action was defective. Plaintiff reasons that the condemnation action was void ab initio, and, therefore, the city did not transfer valid title to defendant, thus making defendant liable as a trespasser. We disagree.

MCL 213.57; MSA 8.265(7) provides in relevant part:

> [T]he title to the property described in the petition [for condemnation] shall vest in the [public] agency as of the date on which the complaint was filed. The right to just compensation shall then vest in the persons entitled to the compensation and be secured as provided in this act.

The primary goal of statutory construction is to ascertain and give effect to the intent of the Legislature. Legislative intent can be ascertained from examining the language of the act, the subject matter under consideration, the scope and purpose of the act, and other preceding statutes. *Richmond Twp v Erbes,* 195 Mich App 210, 221-222; 489 NW2d 504 (1992). The purpose of the condemnation act and its "quick take" provision is to enable governmental agencies to quickly obtain title so

that public projects can proceed without the delays of normal civil litigation:

> The Michigan condemnation act, MCL 213.361 *et seq.*; MSA 8.261(1) *et seq.*, represents an attempt by the Legislature to enable various condemning governmental agencies, in the absence of any controversy as to the necessity of the taking, to quickly obtain title and possession of condemned real property without the inherent delay found in a normal civil action. To do so, the Legislature has allowed the petitioning governmental agency *to* gain quick title to the premises, while insuring that the private property owner will have the right *to* receive just compensation for his property.
>
> *       *       *
>
> The effect of the several statutory provisions is to permit the condemning authority to quickly acquire title to the subject property upon the performance of certain acts while attempting to secure and protect the rights of the condemnee on the issue of just compensation for the taking within the meaning of the provisions of the Federal and Michigan constitutions, US Const, Am V; Const 1963, art 10, § 2, which prohibits the state from taking any private property without just compensation being provided to the property owner. [*City of Fenton v Lutz,* 73 Mich App 117, 120-122; 250 NW2d 579 (1977).]

In light of the Legislature's intent that the condemning authority gain quick title without the delays of normal civil litigation, we think that MCL 213.57; MSA 8.265(7) must be construed as vesting title in that authority once a complaint for condemnation is filed. This reading does not destroy the condemnee's right to challenge the complaint or the validity of any offers received from the condemning authority. Instead, it holds in abeyance resolution of such challenges without causing undue delay in the transfer of title. To

hold that title does not vest in the condemning authority until the propriety of the complaint for condemnation is resolved, as plaintiff urges, would completely frustrate the Legislature's intent to promote quick vesting, as this case well illustrates. Here, the original complaint for condemnation was filed in November 1980. The propriety of the complaint was not finally resolved until May 1989, after two pretrial hearings, two trials, three trips to this Court, and one trip to the Supreme Court. Postponing the vesting of title in the city during the pendency of these proceedings would be wholly at odds with the legislative purpose of "quickly obtain[ing] title and possession of condemned real property without the inherent delay found in a normal civil action." *City of Fenton, supra,* p 120.

Another rule of statutory construction reinforces our reading of the statute. The Legislature's language in MCL 213.57; MSA 8.265(7) provides that title shall vest in the condemning authority "as of the date on which the complaint was filed." To justify plaintiff's position, this language would have to be amended to provide for vesting "as of the date on which *a proper* complaint was filed." As was noted in *Feld v Robert & Charles Beauty Salon,* 435 Mich 352, 368; 459 NW2d 279 (1990), however, where the language used by the Legislature is so plain as to leave no room for construction, the court should not read into an enactment words that are not found there by express inclusion or fair implication. Obviously, the caveat that the complaint be judged to be proper is not expressly included in the statute. Moreover, given the statute's purpose of expediting the condemnor's taking title, we do not think that such a caveat can be fairly implied.

Analogous federal legislation has also been construed as we construe Michigan's statute. In

*United States v Herring,* 750 F2d 669 (CA 8, 1984), after remand 781 F2d 119 (CA 8, 1986), the federal government condemned three acres of Herring's property without proper service of notice under the Declaration of Taking Act, 40 USC 258a, and Herring did not discover the condemnation until several years later. The *Herring* court held that, despite the lack of proper notice to Herring, title nevertheless vested in the government when it filed its declaration of taking. The court stated:

> The purpose of the Declaration of Taking Act is to establish a procedure in which the government's title to property is completely settled at the outset, thereby allowing the government to proceed with public projects in advance of time consuming proceedings concerning valuation. See HR Rep No 2086, 71st Cong, 3rd Sess 1; 74 Cong Rec 777, 778 (Dec 15, 1930) (statements of Rep. Graham).

> \* \* \*

> We hold, therefore, that upon filing the declaration of taking . . . title vested immediately in the government. *United States v Dow,* 357 US 17, 21, 22; 78 S Ct 1039, 1044; 2 L Ed 2d 1109 (1958); *Covered Wagon, Inc [v Comm'r, Internal Revenue,* 369 F2d 629, 633 (CA 8, 1966)]; *Fulcher [v United States,* 632 F2d 278, 281 (CA 4, 1980)]; *United States v 125.2 acres in Nantucket, Mass,* 732 F2d 239 (CA 1, 1984).

> \* \* \*

> In reaching the conclusions announced, this Court follows the holding of the majority in the case of *Fulcher v United States,* 632 F2d 278 (CA 4, 1980). . . . In *Fulcher,* the United States condemned property for a National Park [but] erroneously gave notice to a party other than the actual landowner. . . .

> \* \* \*

> The majority in *Fulcher,* 632 F2d 278 [,281], stated, "We therefore agree with the district court

that the condemnation of the property . . . vested an indefeasible title in the government. This is manifest from the statute." [750 F2d 671-672.]

The reasoning of the *Herring* court is applicable to this case. In light of the purpose of the condemnation act—to quickly settle the government's title while preserving the landowner's right to just compensation for the taking—we conclude that the filing of the complaint for condemnation, regardless of whether the complaint is later adjudged defective, vests title with the condemning authority.

Finally, we agree with the trial court that this Court's decision in *Acquisition II* did not cause the city's title to the subject property to revert to plaintiff. It is undisputed in this case that the city had the authority to acquire property for the "Poletown" project. See *Poletown Neighborhood Council v Detroit,* 410 Mich 616; 304 NW2d 455 (1981). Where the government's authority to acquire property is not at issue, the condemnation statute vests indefeasible or absolute title in the government. *Herring,* 750 F2d 671; *Fulcher, supra,* p 281.

Affirmed.